ELLEN CAVANAUGH v. G. W. BUEHLER, ET AL.

120 441
207 190

ERROR TO THE COURT OF COMMON PLEAS OF ERIE COUNTY.

Argued April 23, 1888.—Decided May 21, 1888.

(*a*) The plaintiffs at different dates in 1867, through real estate agents sold two parcels of real estate to the defendant, who, through the same agents, sold the parcels to others, the purchase money in both instances payable by instalments and handled by said agents, who in 1876, became insolvent having on their books a sum of money to the credit of the defendant.

(*b*) In 1874, a deed embracing both parcels was executed and acknowledged by the plaintiffs and left with said agents, to be delivered to the defendant on full payment of the purchase money; about the time whereof one of the second vendees made a payment to the agents of $133.25, when the defendant asked the agents, "Does this finish paying on the Russel lot?" and they replied, "Yes; it does."

(*c*) An action in covenant was brought upon one of the contracts to recover unpaid purchase money claimed thereon, in the trial of which in 1882 arose the incidental question whether said deed then offered by defendant as evidence of payment had been delivered, resulting in a verdict and judgment for the defendant. In a like action brought at the same time upon the other contract, but tried in 1886, *held:*

1. That the evidence referred to in (*b*) was not sufficient to establish that the defendant directed the payment of $333.25 to be applied upon the article on which the purchase money in the present suit was claimed.

2. That the mere fact that the agents had received payments from the vendees of the defendant would not constitute payments to the plaintiffs, unless by some act or agreement, binding alike upon the defendant, the agents, and through them the plaintiffs, they were so applied.

3. That the fact that the delivery of said deed was a controverted question on the trial of the former action, did not render the record of said action admissible as evidence that that question had passed in rem judicatam.

4. In applying the principle of res judicata the inquiry is not always, perhaps, as to the identity of the cause of action, but as to the identity of the matter in issue; and the matter in issue is not what comes collaterally or incidentally in controversy, under the evidence, but what is essentially and directly in issue in the cause : per Mr. Justice CLARK.

Before GORDON, C. J., PAXSON, STERRETT, GREEN, CLARK and WILLIAMS, JJ.; TRUNKEY, J., absent.

No. 155 January Term 1887, Sup. Ct.; court below, No. 200 May Term 1880, C. P.

On April 16, 1880, a summons in covenant was issued in a suit by G. W. Buehler and Thomas H. Robinson against Ellen Cavanaugh, executrix of Thomas Cavanaugh, deceased, to recover a balance of purchase money claimed to be due upon a contract for the sale of real estate. On July 10th the defendant pleaded, covenants performed absque hoc. On March 31, 1884, a special plea of former trial, verdict and judgment in same cause of action, was filed by leave of court.

At the trial on January 12, 1886, it was made to appear:

On January 10, 1867, G. W. Buehler and Thomas H. Robinson, through N. W. Russell, their attorney in fact, sold by articles of agreement to Thomas Cavanaugh, lot No. 2657 in the city of Erie, for $1,250, payable in instalments; and, on March 5, 1867, they sold to said Cavanaugh the east half of lot No. 2660, adjoining the foregoing, for $750, payable also in instalments. These sales were effected through Hayes & Kepler, then in business as real estate agents in Erie.

Hayes & Kepler were the agents of Thomas Cavanaugh, also, in the sale of the same lots to several purchasers, Hageny, Sullivans, and Nunn, upon articles of agreement providing for annual payments, and from time to time they received and receipted for payments made on these sales. This suit was brought to recover a balance due on the contract of January 10, 1867.

On April 16, 1880, the same day the present suit was begun, an action of covenant was also instituted by the same plaintiffs against the same defendant, at No. 199 May Term 1880, to recover a balance of purchase money claimed upon the contract of March 5, 1867. In that action a verdict was rendered on March 4, 1882, in favor of the defendant, and judgment entered thereon.

The plaintiffs (in the present case) proved the contract of January 10, 1867, with certain payments credited thereon, and showing the balance claimed, rested. The defendant then produced and offered in evidence a deed from the plaintiffs to Thomas Cavanaugh dated December 27, 1874, and recorded January 26, 1880. Plaintiffs objecting to the admission of this deed on the ground that no delivery was proven, the court held that possession was prima facie evidence of delivery, and the deed was admitted. The defendant then rested.

In rebuttal, the plaintiffs introduced testimony tending to show that at the time of its date the deed had been executed and acknowledged by the grantors and left with Hayes & Kepler to be delivered on payment of the balance of purchase money, and that when they became insolvent and made an assignment in October, 1876, the deed with other papers had passed into the hands of Mr. Gunnison, then the plaintiff's attorney, who notified Mrs. Cavanaugh, the defendant, of the balance claimed to be due on the contract; that defendant called on Mr. Gunnison, and receiving the deed to look at it, kept it and carried it away without his consent.

The defendant, in sur-rebuttal, called a witness, S. P. Dempsey, a son by a former husband, who testified that during the holidays of 1874–5, he came into the house of Thomas Cavanaugh, with whom he resided, and found Mr. Hayes, of Hayes & Kepler, there in conversation with Mr. Cavanaugh; that the latter asked for the deed and witness went with his mother to a drawer where it was kept, obtained it, and Mr. Cavanaugh gave it to Mr. Hayes to be put on record; that witness had previously read the deed and knew it was the deed in controversy, stating also how he fixed the date of the occurrence; that Mr. Cavanaugh, then under disability, died of a cancer in April 1875. The defendant, with other offers to prove that the purchase money had been paid in full and the deed delivered thereafter, then proved by Patrick Hageny that he made his last payment upon the purchase of one of the lots from Mr. Cavanaugh to Hayes & Kepler by a check from C. S. Marks, treasurer of a building association, drawn to the order of Thomas Cavanaugh for $333.25 and that he then received his deed from Mr. Cavanaugh. This witness was followed by John Biggers, a foreman in sewer-construction for Mr. Cavanaugh, who testified that on January 2, 1875, he was up at the sewer and Mr. Cavanaugh came up, it was about his last time out: that he went with Mr. Cavanaugh, and they got some city warrants and took them to Hayes & Kepler, and that Mr. Hayes took the warrants and gave to Mr. Cavanaugh the check in their stead; that Mr. Cavanaugh said to Mr. Hayes, "Does this finish paying on the Russell lot?" and Mr. Hayes said, "Yes, it does." Mrs. Cavanaugh, the defendant, testified that after the receipt of a postal card from Mr. Gunnison on

November 9, 1879, she called upon him, claimed that the deed had been delivered and had been put into the hands of Mr. Hayes to be recorded, and finding it in the possession of Mr. Gunnison, she obtained it and kept it against his protest, as her own.   The defendant then offered in evidence the record in No. 199 May Term 1880, the declaration, pleadings, evidence, charge to the jury, and the points and answers,—all the record, "for the purpose of showing that this case was substantially tried upon the former trial."   The offer was objected to as incompetent; when the objection was sustained and the offer refused.[8]

The plaintiffs replied to the foregoing, inter alia, by the testimony of Mr. W. P. Hayes, of the firm of Hayes & Kepler, who denied that he had received said deed from Mr. Cavanaugh to be put on record, as testified by Mr. Dempsey, or that he had said to Mr. Cavanaugh, as testified by John Biggers, that the purchase money upon the article was paid in full; the witness admitted that the accounts of Hayes & Kepler showed a balance due Mr. Cavanaugh of $497.76, without including the $333.25 paid by Hageny.   The plaintiffs also read the deposition of S. P. Kepler, of Hayes and Kepler, who testified to the effect that Hayes & Kepler sold lots for Cavanaugh and Hageny and received portions of the purchase money, which was credited on the books of the firm to Cavanaugh, and that Cavanaugh instructed them that the money received from the sales of his property should be held for him and should not be paid on the plaintiff's articles as he intended to pay the latter himself when due, and he wanted the money collected for him for his own use.

The court, GALBRAITH, P. J., charged the jury and answered the points presented as follows:

The plaintiffs in this case claim that there is a balance due them from the estate of Thomas Cavanaugh of $836.39 on an article of agreement made between the plaintiffs and Thomas Cavanaugh in his lifetime, on the 10th January, 1867, for the sale of a part of a lot in the city of Erie, the terms being $100 cash in hand, and the remainder, $1,141, in payments running until January 10, 1875, eight annual payments.

Cavanaugh died in April, 1875, and this suit is against Mrs. Ellen Cavanaugh, his executrix.

N. W. Russell was the duly constituted agent or attorney of the plaintiffs, who reside in a distant part of the state. Mr. Russell, with the assent of his principals, made Hayes & Kepler, real estate agents and dealers at that time in Erie, agents under him. Cavanaugh also made Hayes & Kepler his agents to re-sell the property purchased from the plaintiffs for him, and it appears that they did so sell to several purchasers. It is from this double agency, probably, that the complication in this case, whatever there is, has arisen.

It is alleged on the part of the defendant, Mrs. Cavanaugh, that the entire amount due on this contract in suit has been paid, by its having been received by Hayes & Kepler, as agents of the plaintiffs, and the evidence shows that they have in their hands a balance of $497.76, and have had since September 6, 1878, standing to the credit of Thomas Cavanaugh on their books, they in the meantime having become insolvent.

It is claimed by the defendant that Hayes & Kepler received this money as agents for the plaintiffs, and that the deed was made, and delivered in compliance with the terms of the article in suit, but that afterwards it got into the possession of Hayes & Kepler in a manner that you have heard from the evidence on part of the defendant, of Mr. Dempsey, and Mr. Russell, by whom it was delivered to Mr. Gunnison, from whom the defendant admits she took it without Mr. Gunnison's consent.

There is no allegation on part of the defendant that the deed thus obtained would place any right, in law or equity, in her. There couldn't be any such allegation, because from the statements here made, and not denied, this obtaining of this deed could not by any possible construction be held to be a delivery at that time. She took it without the consent of Mr. Gunnison. That is conceded, and so far as that transaction was concerned it would vest no right whatever. It depends on what right had been acquired before that by the alleged former delivery. They claim that this deed had been formerly in the possession of Cavanaugh, and had afterwards got into the possession of the attorney of the plaintiffs here, and that, therefore, Mrs. Cavanaugh obtained only what she had a right to get; that is the allegation of the defendant.

The case turns mostly on the claim that the purchase money had been paid, and the deed delivered at a previous time, and

that in taking it from Gunnison Mrs. Cavanaugh was taking only what was hers on account of the former delivery.

The question is, then, was this purchase money paid? It comes down to that. Of course the possession of the deed would be prima facie evidence, apart from any explanation, of payment. It would merge the article of agreement. The law would raise the presumption that the amount stipulated for in the article was paid when the deed was in the possession of the purchaser; but that is open to be rebutted, and if you find from the evidence that Hayes & Kepler received from Cavanaugh, or others for him, an amount of money sufficient to pay the balance due on the article in suit, they being at the same time agents for the plaintiffs, and paid the same to the plaintiffs or transferred the same to them and their credit, with their knowledge or under a previous understanding to that effect between them and the plaintiffs, it would discharge the defendant to the extent of such payment.

It would not be so unless such transfer or payment was actually made. That is, the mere having in their hands the money of Cavanaugh, they being at the same time the agents of the plaintiffs, would not operate as a payment to them unless it was actually applied and passed to their credit on their books or indorsed on the article in such a way as to make them liable to the plaintiffs.

Hayes & Kepler were the agents of both. The collection by them for Cavanaugh, or the receipt of the money by them and holding it by them, would not be a payment to the plaintiffs at all, unless they, being the agents for the plaintiffs at the same time, actually transferred it to them, and put it in such shape that it was theirs by transferring it on their account or informing them that they had the money for them. They were Cavanaugh's agents, and when they received the money for Cavanaugh it was Cavanaugh's, and it didn't cease to be his from the fact of their being agents at the same time for the plaintiffs, or Mr. Russell, who was the agent of the plaintiffs, or from the understanding that it should be applied there, unless it was applied, so far as this balance of $497.76 is concerned.

There is another matter that will be referred to as to this alleged payment. I am speaking about this balance now in

the hands of Hayes & Kepler. It doesn't follow, by any means, that this amount is to be charged up to the plaintiffs as a payment on this article, unless it was applied by Hayes & Kepler by being passed to the credit of the plaintiffs on their books, or entered on the article as a payment by Cavanaugh, as already explained to you.

Now this is entirely for you. Did they, under the direction of Cavanaugh, credit this money to Cavanaugh on the account of these articles by putting it on the articles, or transferring it to the credit of Buehler and Robinson? This is a fact that is not to be assumed or guessed at, but it must be proved in some way. Now Mrs. Cavanaugh, by her attorneys, alleges that she has proved it by having possession of this deed prior to the time of getting it from Gunnison; that that would be the prima facie evidence that this matter was closed up. And she also claims to have proved it by other circumstances which have been discussed, and which are entirely for you. I will not comment upon them in any way, in passing upon that part of the case, which is your province to determine. It is entirely for you. The mere possession of the deed would be no evidence of this payment unless you find that the deed was duly delivered before the time it was taken by Mrs. Cavanaugh from the office of Mr. Gunnison. That is entirely for you.

If you believe the evidence of Mr. Dempsey, the son of Mrs. Cavanaugh, then it was in the possession of his father before it was in Mr. Gunnison's possession. It is not necessary to go over his evidence. He is quite minute and particular as to the circumstances attending the seeing of that deed in his father's possession. On the other hand, you have the evidence of Mr. Hayes flatly denying and contradicting the statement of Mr. Dempsey. He says that that transaction did not take place; that the deed was not delivered by him, and this purchase money was not paid, so far as he knows, and the deed never was delivered to Mr. Cavanaugh. Here is a question of credibility, and a very important one, which is to be settled and determined by you from the evidence of the witnesses themselves, and from the other circumstances in the case, and I do not propose in any way to intimate any opinion, if I had one, but refer it entirely to you, as intelligent men, to determine from the evidence where the truth lies, because both of

Charge of Court below.

these men are not true.   One or the other is grossly mistaken, or worse.   It is proper to be charitable and take it that the one in the wrong is mistaken.   They are not reconcilable statements.   They are diametrically opposite.   If this deed was delivered and in the possession of Mr. Cavanaugh, as testified to so minutely by his son, at the time he mentions, then Mr. Hayes is mistaken.   If Mr. Hayes is correct, then certainly Mr. Dempsey is entirely in error.   You have the deed in the possession of Mr. Gunnison, and you have it testified to by Mr. Russell that he put the deed in the hands of Mr. Gunnison, as his attorney, to collect the balance of this money, and it is alleged by him and by Mrs. Cavanaugh that that deed was obtained by Mr. Hayes in the manner testified to by Mr. Dempsey for the purpose of putting it on record, and that from there it got into the hands of Mr. Russell, and in that way he gave it to Mr. Gunnison.   This is entirely for you.

Now that is the one matter of fact in this case.   If you find that the deed was actually delivered that is strong evidence, and in the absence of any explanation conclusive, that this matter was all settled up and all paid.       .

But leaving that question, only saying that if you find that that deed was actually delivered, it doesn't make so much difference about the evidence of Biggers as to the payment of the $333.25, or alleged payment; although the deed might be delivered by mistake when there was a balance still due.   But, passing all that, we come to the evidence of Mr. Biggers as to the alleged payment, about which there is an equally decided difference between the witnesses Hayes and Biggers.   Mr. Biggers testifies that on the 2d of January, I think, he was present when Mr. Cavanaugh paid Mr. Hayes $333.25.   He testifies, although a considerable time has elapsed since that, with great minuteness, as to this transaction about this check and the conversation.   He says that he went with Cavanaugh to Mr. Hayes, and that this was paid to Hayes, and that he asked Hayes if this paid up the balance of the Russell lot, and that Mr. Hayes replied that it did.   And he thinks there was something about some change.   Mr. Hayes says he has no recollection of that, and that his books don't show it; and although he doesn't say point blank that no such transaction occurred, that is the strong inference from his testimony, that he has no recollection of it and that the books don't show it.

Charge of Court below.

Now it is for you to bring to bear on this evidence of Mr. Hayes, in business here and doing a large amount of business, and depending on his books for his recollection largely. [Mr. Biggers was a laboring man, and why he went with Mr. Cavanaugh on that occasion, or how he came to remember this so minutely, has been a matter of discussion between the attorneys on either side, and it is for you to determine whether this statement of Biggers is true or not. If it is true, there would be that credit of $333.25, which would have to be deducted from the balance claimed, with interest from that time, provided you should find against Mrs. Cavanaugh, so far as the other part of the case is concerned.]² It would be an omission for which Mrs. Cavanaugh would be entitled to have credit here, if you believe the evidence of Mr. Biggers; leaving the other part of the case to be decided in favor of the plaintiff—so far as that balance is concerned, I mean.

This case presents issues of fact, and you will have to be careful in passing on the case, to avoid being influenced by anything outside of the evidence. It is a mere question of fact, under the law as laid down by the court, and one perhaps of some difficulty to solve, and you are in the box to do that upon the preponderance of the evidence. In a criminal case the offence must be made out beyond a reasonable doubt; but in a civil case it is the preponderance. Which way does the scale incline when you come to weigh this evidence, you holding it level and doing your best to do justice between the parties? . . . . .

Plaintiffs' points, inter alia:

5. That there is no evidence that Cavanaugh ever directed the application of any payment by Hageny and Sullivan, or others, to the Buehler articles, excepting those payments which were actually so applied and indorsed by Hayes & Kepler on said articles.

Answer: This is affirmed.¹

6. That even if Cavanaugh directed Hayes & Kepler to pay moneys received by them for him to plaintiffs, the defendant would have no right to credit for any payments made to Hayes & Kepler, unless they actually paid the same to plaintiffs, or credited the account of plaintiffs on their books with the same.

Answer: The evidence in the case shows that Hayes & Kepler, acting as the agents of both parties, namely, for Geo. W. Buehler and Thomas H. Robinson on the one hand, and Thomas Cavanaugh on the other, the said Hayes & Kepler being in the real estate business and acting as agents for various persons in the sale of property and so forth, doing such business as real estate agents usually attend to. The mere fact of Hayes & Kepler having in their hands money of Cavanaugh which he had directed them to apply on his indebtedness to the plaintiffs, on this article would not constitute a payment unless the amount was actually so applied by being credited over to the account of plaintiffs either by being indorsed on the article or credited to plaintiffs on their books.[3]

Defendant's points, inter alia:

4. That if the jury believe from the evidence that there was sufficient money in the hands of Hayes & Kepler to pay all the purchase money, and that the money had been left in their hands as payment of the purchase money, then the plaintiff cannot recover, and verdict must be for defendant.

Answer: This would not be so unless the jury find from the evidence that Hayes & Kepler either received the money as the agents of the plaintiffs, Buehler and Robinson, or that having collected it on sales made for Cavanaugh, they did actually apply it to the payment of the article in suit, either by paying the money directly to them or by passing it to their credit as their agents, by entry on their books or by indorsing it on the contract.[4]

5. That if the jury believe from the evidence that Hayes & Kepler received the check given in evidence for $333.25, in payment of balance due the plaintiffs on the article of agreement now in suit, and that said Hayes so informed Mr. Cavanaugh, the plaintiffs cannot recover, and the verdict must be for the defendant.

Answer: This is for the jury. It is for you to say whether such payment was in fact made, and whether Hayes did say at the time that that constituted the balance due, and such statement, even if we believe it was made, would not be binding upon plaintiffs unless it was correct.[5]

6. That the question of the delivery of the deed to Mr.

Cavanaugh having been adjudicated on a former trial between the same parties in No. 199 May Term 1880, the article in suit merged in the deed, and therefore this suit cannot be maintained.

Answer: This is refused.[6]

Defendant's counsel asked to send to the jury the articles and deeds and the check and order which were given in evidence.

By the court: I don't see that it is necessary, Mr. Allen. The article may go to the jury, but I don't think it is necessary that the other should. Where there is a question about a paper it is not proper to send it out. I don't think it is proper to send these papers out. Obtained as this deed was admittedly obtained, taken as it was by Mrs. Cavanaugh, I don't think it is a paper to go to the jury as conclusive evidence. It is for the jury to decide upon the evidence whether or not it was delivered.[7]

The jury returned a verdict in favor of the plaintiffs for $837.50. Judgment being entered, the defendant took this writ, assigning for error:

1. The answer to plaintiffs' fifth point.[1]
2. The part of the charge embraced in [ ][2]
3. The answer to plaintiffs' sixth point.[3]
4–6. The answers to defendant's points.[4 to 6]
7. The refusal to send out the deed and other papers in evidence.[7]
8. The refusal of the defendant's offer of former record.[8]

*Mr. George A. Allen* (with him *Mr. L. Rosenzweig*), for the plaintiff in error:

1. The answer of the court to the plaintiffs' fifth proposition was in direct conflict with a large portion of the evidence (reviewed) and clearly erroneous.

2. Biggers was not a laboring man, but the trusted foreman of Mr. Cavanaugh. He clearly explained in his testimony why he was with Mr. Cavanaugh. Judicial comments disparaging to witnesses or parties and not grounded upon evidence, or any other judicial remarks similarly without foundation, which may tend to mislead or prejudice the jury, are improper and

erroneous, and constitute ground for reversal : Stokes v. Miller, 10 W. N. 241.

3. The validity of payments by Cavanaugh did not depend on the clerical work of Hayes & Kepler by indorsements on the articles, or upon correct bookkeeping between them and their principals, Buehler and Robinson. When Cavanaugh directed them to apply his moneys in their hands on the articles, the same did apply, and no indorsements or bookkeeping was necessary to complete the transaction.

4. The answer to the defendant's fourth point was not a direct answer to the proposition, and the answer to her fifth point should have been in the affirmative without qualification. There was no room for doubt that the payment of the $333.25 finished paying for the Russell lots, because it was clear and beyond controversy that at that time there was more than sufficient money in the hands of Hayes & Kepler to complete the payments, and nothing was needed but a clear understanding as to the application of the money.

5. The evidence adduced, charge of the court, etc., will clearly exhibit to this court that the question of the delivery of the deed was fully and finally passed upon favorably to the defendant in No. 199 May Term 1880. A former judgment of a court of competent jurisdiction, in which the right in controversy in a subsequent suit was directly decided between the same parties, is conclusive, although the cause of action in the former suit and the object to be attained by it were different : Cist v. Zeigler, 16 S. & R. 285 ; Eastman v. Cooper, 15 Pick. 276 (26 Amer. D. 600, 610).

*Mr. S. M. Brainerd*, for the defendants in error :

1. Is there any evidence in the case that Hageny, the Sullivans, or any one else, made any payment to Hayes & Kepler on the Buehler and Robinson article of January 10, 1867, for Cavanaugh, which he directed to be applied to the articles, except those payments which were actually applied and indorsed? The answers of the court were clear statements of the law. No other answers could have been made.

2. The two actions were upon separate and distinct contracts. The same evidence would not have supported both actions. To admit the offer, the causes of action must have

been identical : Schriver v. Eckenrode, 87 Pa. 215 ; 1 Starkie Ev., 262 ; 1 Greenl. Ev., 528 ; Hibshman v. Dulleban, 4 W., 183 ; Martin v. Gernandt, 19 Pa. 124.

MR. ALLEN, in reply :

It is not necessary that it should have been directly and specifically put in issue by the pleadings, but it is sufficient if it is shown that the question which was tried in the former action between the same parties is again to be tried in the suit in which the former judgment is offered in evidence ; and parol evidence is admissible to show that the same fact was submitted to and passed upon by the jury in the former action : Dutton v. Woodman, 9 Cush. 261 ; Walker v. Chase, 53 Me. 261 ; Jennison v. Springfield, 13 Gray 544 ; Bury v. Adams, 14 Allen 210 ; Merritt v. Morse, 108 Mass. 108.

OPINION, MR. JUSTICE CLARK :

On January 10, 1867, Buehler and Robinson, through their attorney in fact, Russell, by articles of agreement, sold to Cavanaugh lot No. 2657, in the city of Erie, for the consideration of $1250, and on the 5th of March thereafter, the adjoining eastern half of lot No. 2660, for the consideration of $750. These sales were negotiated through Hayes & Kepler, real estate agents, who were authorized to receive and did receive several instalments of the purchase-money. Cavanaugh subsequently sold the same lots in parcels to Hageny, Sullivans, and Nunn. These sales were also effected through Hayes & Kepler, who were authorized by Cavanaugh to receive and receipt for the purchase-money, and they did receive and receipt for the same as it was paid in.

This action of covenant is brought upon the agreement of January 10, 1867, to enforce payment of the balance of the purchase-money. The defendant's contention is, that the purchase-money was paid in full before suit brought, by moneys coming into the hands of Hayes & Kepler from Hageny, Sullivans, and Nunn, on their several purchases from Cavanaugh ; that as Hayes & Kepler were not only the agents of Cavanaugh, but also of Buehler and Robinson, the money received by them from these various sources, must be treated as payments not only upon the agreements on which they were pri-

marily paid, respectively, but also upon the original purchases from Buehler and Robinson. It is not alleged that there was any express agreement in advance to this effect, nor is it seriously contended that this was the effect of the relation which Hayes & Kepler bore to the respective parties. Hayes & Kepler in receiving money from Hageny, Sullivans, and Nunn, acted as the agent of Cavanaugh, and the money in their hands thus received, was of course the money of Cavanaugh, until by some act of his or of Hayes & Kepler, with his consent, it was actually turned over to Buehler and Robinson. Hayes & Kepler were responsible to Cavanaugh until, by his direction, they were enabled to, and did, in some way, assume responsibility to Buehler and Robinson.

But, it is contended there was evidence from which the jury might infer that the money coming into the hands of Hayes & Kepler, the common agents of both, had in fact been so applied. The defendant alleges that on the 2d of January, 1875, Hageny paid to Cavanaugh $333.25 by check of Erie City Building and Loan Association on the Humboldt Safe Deposit & Trust Co.; that the check was indorsed by Cavanaugh and delivered to Hayes & Kepler; that Cavanaugh exchanged city warrants for the check, and lifted it, leaving in their hands, however, the full amount of the check. It is conceded moreover, that on September 6, 1878, Hayes & Kepler had a balance in their hands of $497.76, received from Hageny, Sullivans, and Nunn or from some of them, as payments on their purchases from Cavanaugh; this sum is exclusive of $333.25 above referred to, the receipt of which latter sum Hayes & Kepler positively deny. It is admitted that the $333.25 was not of itself sufficient to pay Cavanaugh's debt to Buehler and Robinson, but that this sum, taken with the amount which Hayes & Kepler admit to have been in their hands, was sufficient and more than sufficient for that purpose.

At the trial, the plaintiffs by their fifth point requested the court to instruct the jury as follows: " That there is no evidence that Cavanaugh ever directed the application of any payment by Hageny and Sullivans, or others, to the Buehler articles, excepting those payments which were actually so applied and indorsed by Hayes & Kepler on said articles." The point was affirmed, and this constitutes the first assignment of error.

The only portion of the evidence which has been referred to, or which upon examination of the whole case, we have been able to find, bearing or supposed to bear upon the question raised by the answer to this point, is the testimony of John Biggers, in relation to the delivery of the check for $333.25 to Hayes & Kepler, on January 2, 1875. Biggers testifies, that when Cavanaugh had indorsed and was in the act of delivering this check, he inquired of Mr. Hayes, " Does this finish paying on the Russell lot ? "  And that Mr. Hayes replied : " Yes, it does," and the parties without more separated.  It is contended that this was an express application by Cavanaugh of the check to the payment of his debt to Buehler and Robinson ; and further, that as it was said " to finish paying on the Russell lot," it was some evidence that the other moneys were or were to be applied to the same debt.

But we cannot see that the testimony of Biggers could have had any reference to the contract between Buehler and Robinson and Cavanaugh.  The lots, it is true, were known, and throughout the entire transaction appear to have been spoken of, as the " Russell lots ; " but Biggers says that Cavanaugh spoke of the " Russell lot ; "—the inquiry was, " Does this finish paying on the Russell lot ? "  Now, it is clear that the money was paid by Hageny on the Russell lot, which he had purchased ; it was in full of the exact balance owing by him ; it did finish paying for that lot, and if the conversation occurred at all, it related, we think, to Cavanaugh's contract with Hageny.  If the question and answer were directed to the Cavanaugh lots, to which of them did they refer ?  These lots, although adjoining, were distinct ; they were known by different numbers, were purchased under separate contracts, and were to be paid for on different terms and considerations.  The money which it is alleged was thus applied, was more than sufficient to pay for both, and the check could not, in any proper sense, be said to " finish " the contract.  But even if the parties did refer to Cavanaugh's purchase, there is nothing to show which one of the two lots was referred to, and we cannot assume, without proof, that the reference was to both lots together, or to the particular lot covered by the contract in suit.  The evidence referred to can have no legitimate effect beyond the application of the $333.25, and as to that the

learned judge, in his general charge, in the clearest and most explicit manner, instructed the jury, if they believed the testimony of Biggers, a credit should be allowed for that sum.

But, even if it be assumed that Cavanaugh did direct Hayes & Kepler to apply the money in their hands to the purchase-money owing Buehler and Robinson, there is not the slightest evidence that they did so apply it. Hayes & Kepler were the agents of Cavanaugh; in that capacity they received the money, and in that capacity they retained it, until in some way it was turned over to Buehler and Robinson; until that was done, it was subject to his order, and liable to attachment for his debt. It does not appear that Hayes & Kepler paid the money to Buehler and Robinson, receipted it on the contract, credited it to their account, or in any way applied it to the debt in suit. The mere fact that they had the money would not constitute a payment, unless it was, by some act or agreement, binding alike upon Cavanaugh, and upon Hayes & Kepler, and through them upon Buehler and Robinson, applied as such; and upon a full examination of the case we find no evidence to this effect.

It is said, however, that a deed in due form, dated 27th December, 1874, was made from Buehler and Robinson to Cavanaugh, for both lots, not only that described in the agreement of 5th March, 1867, but also that described in the agreement of 10th January, 1867. Whether or not this deed was actually delivered, was submitted as a question of fact to the jury, and we may infer from the verdict that the jury found that it was not. The defendant's contention is, however, that the delivery of the deed was brought in issue in the trial of the action upon the agreement of 5th March, 1867, at number 199, May Term, 1880, and that the question of the delivery had thereby passed in rem judicatam; and that the court erred in submitting the question to the jury. The defendant further contends that as the articles were thereby merged in the conveyance, this suit cannot be maintained.

But it is plain that the specific thing or matter in issue in the trial of No. 199 of May Term 1880, was the payment of the purchase-money of the agreement dated 5th March, 1867. The question of the delivery of the deed was not in issue in that case within the meaning of the rule, although the fact was controverted at the trial. The deed was offered merely

as evidence to establish the particular matter which was in issue. The delivery of the deed was incidental only to the real issue. In applying the principle of res judicata, the inquiry is not always, perhaps, as to the identity of the cause of action, but as to the identity of the matter in issue; and the matter in issue is not what comes collaterally or incidentally in controversy under the evidence, but what is essentially and directly in issue in the cause: King v. Chase, 15 N. H. 15; Wells Res. Adj. 167; Duchess of Kingston's Case, 20 Howell's St. Tr. 538. The delivery of the deed was prima facie evidence of the payment of the purchase-money, and it was for this purpose the delivery was sought to be established. But mere evidential facts are not usually held conclusive; they must be such as are within the substance of the issue; all others are merely collateral. "Neither the judgment of a concurrent nor exclusive jurisdiction is evidence of any matter which came collaterally in question, though within the jurisdiction; nor of any matter incidentally cognizable; nor of any matter to be inferred by argument from the judgment:" Duchess of Kingston's Case, supra; Hibshman v. Dulleban, 4 W. 183.

Besides, the offer of the defendant's counsel shows that the former trial was upon a different contract; the evidence was of payments specifically applied thereon; the testimony of Biggers was introduced to show the payment of the $333.25, and this sum, if allowed, was sufficient to satisfy the debt. Evidence was introduced it is true, as to the delivery of the deed, but it does not appear, nor was it offered to be shown in this case, upon what particular portion of the evidence the verdict was rendered. The delivery of the deed was, therefore, not essential to the finding of the former verdict, as the jury may well be supposed to have rendered their verdict upon other and different grounds. The delivery of the deed, as we have said, was prima facie evidence only of the payment of the purchase-money; to the extent to which the agreement was executed it was merged in the deed; but if the purchase-money was actually unpaid, and otherwise unsecured, the plaintiff might still recover it in this form of action : Byers v. Mullen, 9 W. 266; Neil v. Thompson, 4 W. 405. We are of opinion that the record of the former suit was properly rejected for the purpose for which it was offered.

Nor do we discover any error in the court refusing to allow the deed to be sent out with the jury. What papers shall be furnished to the jury is largely in the discretion of the court, and we see no abuse of that discretion in this instance.

The judgment is affirmed.