### In re DRUMGOOLE.

(District Court, E. D. Pennsylvania.　August 25, 1905.)

#### No. 1,946.

1. BANKRUPTCY—EFFECT OF ORDER—RES JUDICATA.

An order made by a referee on a motion directing a trustee to return to the purchaser of certain casks of whisky sold by the trustee a part of the purchase money on account of a shortage in the quantity, where the amount involved was small, the shortage very large, and no defense was made, does not constitute an adjudication of the terms of the contract of sale which will bind the trustee when a much larger claim is filed involving other packages.

2. SAME—CLAIM AGAINST TRUSTEE—SPLITTING OF DEMAND.

Where a purchaser of a large quantity of whisky at a trustee's sale made a claim for shortage in two packages, which was allowed, he is bar-

red of further claim with respect to other packages, which might have been ascertained and included in the former claim.

In Bankruptcy. On certificate from referee.

E. Spencer Miller, for claimant.
Furth & Singer, for trustee.

J. B. McPHERSON, District Judge. The facts appear from the following reports of the referee (Theodore M. Etting, Esq.) :

"This claim arises under the following circumstances:

"There was sold by the trustee in bankruptcy, at the hands of Samuel T. Freeman & Co., auctioneers, on the 23d day of June, 1904, certain domestic whisky of various ages, then in barrels and on storage at a distillery, known as 'Scarlett Mills, Pa.' Notice of the proposed sale was given by postal cards. Claimant received one of the cards, attended the sale, and purchased certain whisky which in the card is described as follows:

" '109 bbls. Drumgoole, Pa., Rye Whisky, spring 1902, 3,763.7 gals.'

"The price paid was $1,166.75.

"The present application, which is by petition, heard on answer and proofs, is for an order on the trustee for the repayment of $254.06.

"The claim, as stated in the petition, is 'that, in fixing the amount of his bids and in making payment, claimant relied upon the representation, declared by the advertisements, that he was to acquire thereby, substantially, 3,763.7 gallons of whisky of the character specified in said advertisement; that he would not have bid and paid for the same the sum of $1,166.75, had he not understood that said advertisements represented to him and assured him that the quantity of whisky to be received by him, should his bid become a purchase, would be, substantially, 3,763.7 gallons.'

"The defense set up is that the whisky was sold as per the gauge furnished by the internal revenue department, and that there was no warranty.

"The claimant offered in evidence a previous decision of Referee Hunter, to whom the case had been referred during my absence, together with the record containing the application upon which Mr. Hunter's opinion had been given.

"The application was made on September 21, 1904, by motion. The referee was asked, because of an ascertained shrinkage of 46 gallons in two of the packages, known as packages Nos. 303 and 352, to make an order for the payment of $14.50.

"Mr. Hunter's opinion was rendered upon this application. In the opinion and in the record the date of the sale as stated is July 29th. There was but one sale, and, as the error referred to is purely clerical, an amendment was allowed.

"It is contended, on behalf of the claimant, that the trustee is estopped from setting up the defense contained in the answer, by reason of Mr. Hunter's opinion upon the previous application; the terms of sale being thereby conclusively determined. This contention cannot, I think, be maintained. The expression that a judgment is conclusive of every matter which might have been litigated is misleading.

"What is really meant is that a judgment is conclusive upon issues tendered by the plaintiff's complaint. Freeman on Judgments (4th Ed.) § 249.

"A point not in litigation in one action cannot be received as conclusively settled in any subsequent action upon a different cause, because it might have been determined in the first action. Parties are only bound by what was in fact litigated and determined. Cromwell v. County of Sac, 94 U. S. 351, 24 L. Ed. 195.

"When a judgment in one action is offered in evidence in a subsequent action upon a different demand, it operates as an estoppel only upon matters actually at issue and determined in the original action, and such matters, when not disclosed by the pleadings, must be shown by extrinsic evidence. Davis v. Brown, 94 U. S. 423, 24 L. Ed. 204.

"If, upon the face of the record, anything is left to conjecture as to what was necessarily involved and decided, there is no estoppel in it when pleaded,

140 F.—14

and nothing conclusive in it when offered in evidence. Russell v. Place, 94 U. S. 606, 24 L. Ed. 214.

"I do not understand that the more recent case of New Orleans v. Citizens' Bank, 167 U. S. 371, 17 Sup. Ct. 905, 42 L. Ed. 202, is at variance with the cases above referred to. I understand that case to decide that in the second action the question of estoppel will depend upon the issue in the two actions, upon the similarity of the right to recover and the defense, and that the estoppel can only be of avail in the second suit when the very matter or thing which it is sought to litigate must have been adjudicated in the prior action.

"It would, I think, be a perversion of the principle by which estoppel is governed to give to motions not raising distinct and definite issues the dignity of pleadings, or to orders made thereon the effect of judgments. The present case furnishes an apt illustration. Within a comparatively short time after the sale the purchaser, by motion, asked for an allowance of $14.50 on account of shortage in two of the packages. No definite issue was raised involving the terms upon which the petitioner's purchase had been made, and no evidence was offered other than that of the bankrupt, who was called by the claimant to establish the existence of a custom in the trade. The referee, in making the allowance, used some general expression with regard to contracts. and now I am asked, upon an application of a different nature, with regard to shrinkage not discovered until five months after the purchase, and which relates to other packages and which is founded upon an independent cause of action, to give to the opinion above referred the effect of a judgment upon an issue not raised by any formal pleadings and not sustained by any testimony whatever.

"From the testimony presented with respect to the terms of the sale I find the facts to be as follows: About a week before the sale, and after the postal cards had gone out, the question arose whether the whisky should be sold as so many gallons, or whether it should be sold subject to regauge. There was a consultation upon this question between counsel for the trustee and the auctioneer. It was concluded to sell the whisky on the following terms: The purchaser to pay for the amount shown by the government gauge and to take what there was there, and that, to guard bidders, an announcement should be made before the sale to the above effect.

"Such an announcement was made before the whisky was offered for sale. The whisky purchased by the claimant, doubtless in part because of these circumstances, brought a lesser price than was anticipated, and, though the sale was confirmed, there was evidently some disappointment with respect to the price obtained.

"In arriving at the conclusions above referred to, I am not unmindful of the fact that the claimant's testimony is that no notice was given other than that contained in the postal cards, that if such notice had been given he would have heard it, and that he had no knowledge at the time of the purchase that the quantity would be less. Neither am I unmindful of the fact that the testimony of the claimant is supplemented by that of Mr. Dorsey, at whose instance the claimant attended the sale, as well as by that of Mr. Bellwar. Both of these witnesses deny that any such announcement was made, and say that their position was such they could readily have heard it if made; but their testimony is in entire conflict with that of the Messrs. Freeman, one of whom cried the sale, whilst the other was on the floor. Neither of these witnesses have any interest in the matter, and they were charged with the responsible duty of making the sale, and I believe their testimony. The claimant is an upholsterer and a purchasing agent. He never had purchased before at a sale of this character. The sale was made in June. This application was not made until December following. He is an interested party, as is also Dorsey. Bellwar is a salesman, but positively refused to disclose, when asked, his present employer's name, and whilst the testimony of all three of these witnesses is that they received postal cards before the sale, it does not appear from whom or how they received such cards; and the practice in bankruptcy sales is to send cards to prospective buyers only. In mailing cards, the trade or calling of the person to whom they are sent is the usual and natural guide to the auctioneer.

"My attention has been called to the fact that Freeman in his testimony,

on the confirmation of the sale, stated 'that some of the goods were sold subject to regauge.'

"It clearly appears, however, from other portions of his testimony, that the goods referred to was not the domestic whisky purchased by the petitioner.

"For the reasons above stated, the petition is dismissed."

### Report on Exceptions.

"The petitioner has filed certain exceptions, which I have appended hereto. After considering the exceptions, and after considering the conclusions of law and fact, as previously reported, I can see no reason to make any change therein, except in the following particulars:

"It is stated in the tenth line from the bottom of the second page of my previous report, that 'there was but one sale.' My thought, which is not there clearly set out, is that there was but one date on which a sale occurred. The whisky contained in the parcels, with respect to which a previous application was made, was a part of the 3,763 gallons purchased by Kappes on the 23d of June.

"I desire further to state, if I have not already made myself clear in this respect, that when Kappes came before Referee Hunter, three months after the sale, he claimed and obtained relief, without any formal written application on a verbal statement made at a meeting of creditors. It was stated by his counsel that he was the purchaser of certain specified packages, which, on examination, had been found to contain 21, instead of 75, gallons. It was upon this ground that relief was sought and obtained.

"In the light of existing facts, I apprehend that Mr. Hunter, if the matter had continued in his charge, would feel at liberty, notwithstanding his former decision, which, under the facts as then presented to him, was proper, in considering the present application, to ascertain the terms of purchase, and that he would repudiate the contention that he was precluded from so doing by his former decision. Whatever power Mr. Hunter had in this respect now devolves upon the present referee. The particular referee in charge of the case is, for the time being, 'the court.'

"In considering the matter now before the court, no argument which is of any avail can be inferred from the prior decision; it appearing that the prior decision was made with respect to another portion of the whisky and upon another issue, and that the record upon which the petitioner relies fails to show that the whisky then purchased, and the whisky now under consideration, was sold under the same contract. Cavanaugh v. Buehler, 120 Pa. 457, 14 Atl. 391; Williams v. Hay, 120 Pa. 485, 14 Atl. 379, 6 Am. St. Rep. 719; Kapp v. Shields, 17 Pa. Super. Ct. 524.

"The exceptions filed by the petitioner are accordingly dismissed."

## The report of Referee Hunter is as follows:

"This claim arose under the following circumstances:

"The whisky belonging to the bankrupt estate was sold at public auction on July 29th last. Two packages bought by Mr. Kappes at the sale contained 75.25 gallons by the original gauges. On regauging at the time that Kappes took possession, the actual quantity of whisky in the packages proved to be 18.10 gallons. Deducting this from the original gauge, it appeared that there was a shortage of 56.15 gallons. There is a government allowance for shortage, amounting upon these packages to 9.75 gallons, and there was therefore a net or excess shortage of 46.40 gallons. Kappes paid at the rate of 31 cents per gallon, and therefore paid on this shortage $14.38. He now claims the return to him of this amount.

"The evidence shows that in case of shrinkage in goods in excess of the government allowance on the regauging of liquor kept in a bonded warehouse, many reputable whisky dealers guarantee to make the loss good. This evidence in the referee's opinion is not sufficient to establish a custom of the trade; but the referee cannot doubt that upon such an excessive shrinkage, apart from any custom, a dealer would be liable to his customers. A certain small shrinkage naturally occurs and is allowed for in the sale of the liquors; but where, as in the present case, 56 gallons out of 74 have disappeared, there

is a substantial failure of consideration. The trustee, as it appears by the evidence, could have had the packages regauged, and such regauging would have shown the actual amount to be sold. This course was not adopted on account of the difficulty of getting at the packages; and the trustee sold 18 gallons for the price of 74. There is here an absolute failure of consideration.

"The claim of Mr. Kappes for the amount of $14.38 is sustained, and the trustee is authorized and directed to pay to him the said amount."

I agree with Mr. Etting that the testimony shows the contract of sale to have. been that the purchaser bought whatever whisky was on hand, but was obliged to bid and pay on the basis of the government's last gauge. Of course, he must have known that he would not find as much in the barrels as the last gauge had disclosed, and, equally of course, he bid a sum per gallon that would probably allow for the deficiency. This being his contract, there is certainly no equity in the present claim, and, indeed, no such ground is relied upon. The claimant's case is put squarely upon the theory that, because of Mr. Hunter's ruling in October, 1904, the terms of sale are conclusively established to have been different from what they were in fact, and, therefore, that a due deduction should now be made for the difference in gallons between the quantity fixed by the original gauge, and the quantity found by the gauge of November, 1904.

To this contention I think two sufficient answers may be made:

1. It is perfectly clear that Mr. Hunter never had before him, and therefore never decided, any controversy concerning the terms of sale. It is true that the rules of formal logic lead to the conclusion that such a controversy was, in theory, involved in his decision; but the record shows that the fact was different. No testimony was taken on the point, there is no note of any such dispute, the referee's opinion does not refer to it, and it is clear that no such question was discussed or considered. The amount claimed then was so small, and the deficiency in the two barrels then under consideration was so large (due probably to some exceptional cause), that nobody cared to press an objection, and the claim was allowed by common consent. Such a situation does not, I think, furnish the proper ground for applying the doctrine of res adjudicata.

2. But, assuming the correctness of the claimant's position, and conceding that the contract was not as Mr. Etting has found it, I think the claimant cannot now succeed, because he has split his cause of action, and therefore is forbidden to recover more than he, claimed before Mr. Hunter. He could have had all the whisky regauged at that time, and presented his full claim for damages. Instead of doing this, he chose to confine himself to the loss on two of the barrels only, and on familiar principles he cannot sue again for the loss on the others.

The fact that this defense is not set up in the trustee's answer is not important. It is a legal defense, growing out of undisputed facts which appear on the record, and did not need to be pleaded formally. The decision of the referee is affirmed.