WILLIAM BALDWIN, Respondent, v. THE CITY OF OSWEGO,
Appellant.

The provisions of sections two, sixteen, and nineteen, of title five, of the
charter of the city of Oswego (chap. 116, Laws of 1848), restricting the
power of the common council to incur liabilities on behalf of the city,
and to levy taxes to discharge the same, do not embrace the making
of local improvements, the expense of which is to be assessed upon and
borne by the property benefited thereby.

Where a municipal corporation, through its authorized agents, the com-
mon council, enters into a contract with an individual, requiring on its
part the payment of moneys (which the common council have power
to collect by assessment upon property to be benefited by the execu-
tion of the contract), an action will lie against the *corporation* for moneys
due upon such contract, through the default of the common council to
enforce the collection of such assessment.

But otherwise, if the contractor agrees to receive payment, specifically
from the moneys to be assessed and collected upon the benefited property.
(See 19 N. Y., 326.)

Where, as a precedent condition to the creating of any liability for a local
improvement, the consent thereto of a majority of the persons whose
*lands are to be benefited thereby* must be first obtained, the petition of
*all* the owners of lands fronting upon such proposed improvement,
requesting it to be made and the expense thereof to be wholly assessed
upon *their* property, is a sufficient compliance with the condition to give
to the common council jurisdiction; and an assessment made in accord-
ance with the terms of such petition, will not be void, although it may
be shown that lands *in fact* benefited by the improvement, have thus
been omitted from the assessment.

Such petition, together with the action of the common council thereon,
constitutes an agreement between the council and the petitioners, that
the latter are the owners of all the property to be benefited by the
proposed improvement, and are the only parties that ought to be
assessed therefor.

APPEAL from a judgment of the Supreme Court. The
action was brought to recover for labor and services per-
formed by the plaintiff under a contract entered into between
him and the city, for deepening the bed of the Oswego river
in a specified part of its course within the city limits, and

other work connected with it. The first cause of action set forth in the complaint, stated the contract and averred performance, pursuant to its provisions, until a default occurred on the part of the city, in making the stated payments stipulated, when the work was stopped for that cause. The second cause of action contained the additional averment that the common council had neglected to cause an assessment to be made, and the moneys to be collected pursuant to the provisions of the city charter, relating to assessments for local improvements.

The case was tried before the Hon. DANIEL PRATT, as a referee, who reported in favor of the plaintiff, for $12,736.31. He stated his conclusions of fact and law according to the statute. The judgment having been affirmed at a General Term, the defendant brought this appeal.

*A. Perry,* for the appellant.

*F. Kernan,* for the respondent.

DENIO, Ch. J. The contract under which the services were performed for which compensation is claimed, provides for the prosecution of the work during the year in which it was made, and through the next year, and a portion of the following year, the compensation to be paid monthly, and the final payment when the work should be completed. Hence the defendant's counsel takes the position that the contract was unlawful and void, for transcending a provision of the charter, which is in these words : "The said common council shall not create any obligation whatever on the part of the city which shall not be payable within the year for which the council creating such obligation was elected, and which cannot be discharged from the income of the same year; but this prohibition shall not affect the provisions of this act before contained in regard to obligations for or respecting the expenditure of any sum raised by special tax." (Laws 1848, ch. 116, title 5, § 19.) By another provision the city is authorized to raise annually, by tax, a sum not exceeding $10,000, for defraying all the contingent and other

expenses of the city not otherwise specially provided for (id., § 2); and the common council is forbidden to make appropriations for the city expenses mentioned in the second section beyond the amount thus authorized to be raised. (Id., § 16.)

I am of opinion that the making of local improvements, the expense of which is to be assessed upon and borne by the property benefited thereby, is not within the scope of these prohibitions. In a certain sense, no doubt, this contract created a pecuniary obligation on the part of the city. It was, however, an obligation to make use of the proceedings pointed out by the act, to collect the expenses of the improvement from the owners of the property benefited. The obligation rests primarily on the proprietors and their real estate. The moneys thus raised are not a part of the income of the city in the sense of the provision. The income referred to is the stated sources of revenue, consisting principally of the annual tax; and if that is not sufficient to pay all the expenses which might properly be made, these expenses must be curtailed, or there must be a special tax voted by the electors qualified to vote on that question. The $10,000 authorized to be raised annually for ordinary purposes, does not impose a limit upon the expenditures to be made for local improvements charged upon particular localities and property owners like the enterprise under consideration.

Assuming, then, that the contract is not unlawful, for the cause suggested, it remains to inquire whether, under the facts disclosed in this case, the plaintiff can maintain an action against the city for the services he has performed under it. A recovery is objected to on these grounds: First, that the burden of paying for improvements of this character being confessedly imposed upon the property holders specially interested in the work, they cannot, without a violation of principle, be charged upon the city at large as a municipal corporation; and, second, that if so, the city could ordinarily be charged under the form of an action for not enforcing the statute obligation of the property owners in

consequence of an error in the preliminary proceedings, pursuant to which the contract with the plaintiff was made, which will be presently mentioned.

As to the first point, the opinion of the learned and intelligent referee before whom the case was tried, was, as it appears from his opinion, that the common council possesses the general power to make improvements of this character, including the authority to contract with individuals for their construction, and that the contractors, or other persons employed, are not concerned to inquire how the money to enable the council to pay the compensation is to be obtained; that the local assessments are only a method of taxation; and that the defendant can no more deny its primary and general liability than it could if the contract were for work falling within the description of expenditures chargeable upon the city generally, the means for defraying which are provided for by the general tax or the other sources of general income.    Without examining the argument in detail, I am of opinion that there is a clear distinction between the cases.    It is assumed by the provisions of the charter that there is a class of improvements so essentially local in kind, that the general tax payers ought not to be burdened at all with the cost of their construction; and hence, a system is provided for reaching directly the parties chargeable with them, without calling upon tax payers for any part of the expense.    A judgment against the city as a corporation, would be a charge upon its general resources; and if the council have the power of contracting in the manner supposed by the argument, the city can be made liable to burdens which the law designed should be borne exclusively by only a part, and it may be, in a given case, a small part, of the citizens.    I am therefore of opinion that the action cannot be sustained on that theory.    And I understand the law to have been so adjudged in this court.    In *Hunt* v. *The City of Utica* (18 N. Y., 442) an action was brought against the city for work done in grading a street, the expense of which was, according to the charter, and by the terms of the contract as construed by the court, payable by a local

assessment. The action was brought while the city authorities were proceeding to enforce an assessment duly made according to the provisions of the charter, and before any default had occurred; and it was held that the plaintiff could not recover. In *Baker* v. *The City of Utica* (19 id., 326) the same question arose in an action by the city surveyor, whose compensation for the services for which he claimed payment were by the charter directed to be embraced in local assessments for grading and paving the streets, in respect to which the services were performed. It was assumed by the court that the plaintiff stood in the same situation with the contracts for the paving and grading, and that, as the city authorities were proceeding diligently in enforcing the assessment when the action was brought, the plaintiff could not recover. There is some diversity between the provisions of the charters of Utica and Oswego, but the general system by which local improvements were charged upon the property owners benefited, and not upon the city at large, was substantially the same.

Though I cannot agree to the conclusion of the referee, I am of opinion that the defendant in this case is chargeable with the compensation due to the plaintiff, on account of its neglect to put in force the instrumentalities which the law had provided, for assessing and collecting that compensation from the parties liable to pay it. The case shows that an assessment had been made, and some of the parties had voluntarily paid certain sums on account of their assessments, which had been paid over to the plaintiff, but that no steps had been taken to enforce the payment of the amount in arrears. There was a plain neglect on the part of the council, who were, in this respect, the representatives of the corporation, and a considerable time had elapsed after the default when the action was brought. In *Cumming* v. *The City of Brooklyn* (11 Paige, 596), it was decided, after an elaborate argument and by a well considered opinion, that in a case of this kind, where the officers of a corporation had unreasonably neglected to compel a proper assessment to be made, the plaintiff, who had performed the labor under a contract with

the corporation, could compel payment by an action against it. The general fund, it was said, could be reimbursed out of the proceeds of the assessment when subsequently made. I am disposed to regard this judgment, which was pronounced in the highest court of general equity jurisdiction, twenty years ago, and which appears to have been acquiesced in, as an authentic precedent for the determination of the present case; and to hold that the defendant is responsible for the amount due the plaintiff, on account of the neglect of its officers to enforce the legal instrumentalities provided for enforcing the payment against the parties primarily chargeable with such payment.

As to the objection that the proceedings under which the contract was made were defective, the argument is, that by the express terms of the charter, the expenses of deepening the channel of the river are to be assessed on the land benefited thereby (tit. 6, § 17; see also §§ 15, 12, 22); but that the application for this improvement, and the resolution or ordinance by which the contract was authorized, were illegal in limiting the assessment to the lots fronting on the river.

The charter requires that a majority of the persons whose names appear upon the assessment roll shall have petitioned for the making of that improvement, or have signified their assent, in writing, within sixty days after the return of the assessment, or, in default thereof, the order for the improvement is to be rescinded. (§ 22). The petition appears to have preceded the order for the improvement, and the assessment itself was made afterward, and after the contract was signed. This was the natural order of the business, and it is not denied but that the requisite proportion of the persons assessed subscribed the petition. But the petition prayed that the expense of the improvement should be assessed on the lots in front of which the excavation was to be made, and the resolution or order of the council contains the same expression. Now it is certainly possible, and perhaps probable, that there were other owners of real estate in the city, who would have been benefited by the proposed improvement, and who might have been assessed for the expense, if the resolution

had been written in the words of the statute—*i. e.,* directing the assessment to be made upon the real estate benefited by the improvement.   I think that would have been the formal and legal method of initiating the proceedings.   But suppose that a portion only of the persons who might be embraced in an assessment, properly ordered and made, but whose lands were so situated, in reference to the site of the improvement, as to be designated by a general description, should agree that it ought to be made at their expense, thus narrowing the scope which the statute would give to the proceeding, and should petition the common council to direct the improvement, and to assess the expense upon them, and the council should proceed accordingly, would the proceeding be void?   On the contrary, I think the petitioners would be estopped from questioning its regularity.   The report of the committee, upon which the resolution in this case was based, states that all the proprietors of lots fronting on that part of the river in which the improvement was to be made, had subscribed the petition.   Taking the petition and the action of the common council together, they form an agreement between the council and the petitioners, that the latter are the owners of all the property which would be benefited by the proposed improvement, and who ought to be assessed therefor.   It is very true that no number of persons interested in an improvement can make an admission or an agreement which will conclude or in any way prejudice any other person.   But the admission and consent of these riparian proprietors has no tendency to charge any other parties with the payment of any part of the expenses.   On the contrary, it relieves all other parties who might otherwise be within the scope of the assessment.   Unless it can be maintained that it is a right or privilege, or in some way an advantage to be taxed or assessed, I do not see that there is any person to complain that the area of assessment in this case is restricted to the lands of the riparian owners who were the petitioners for this improvement.

I think, therefore, the common council was warranted in entering into the contract with the plaintiff, based, as it was,

on the admission of the petitioners in writing, in effect, that they were the only persons to be benefited by, and who were assessable for the improvement.

I think, therefore, that the judgment appealed from should be affirmed.

POTTER, J. This action was brought upon a contract made between the defendant and William Baldwin, now deceased, in May, 1854, by which Baldwin agreed to excavate and deepen the Oswego river on the west side, within certain limits in the city of Oswego, for the considerations expressed in the written agreement, to be paid by the defendant. The plaintiff performed a large amount of labor toward the completion of his contract, and was paid by the defendant from time to time, according to the terms of the contract. The defendant then made default in payment, and the plaintiff discontinued work, and brought this action to recover as far as he had progressed in the work. The principal ground of defense interposed is that the defendant had no power or authority to make the contract in question, and that they are not bound by its terms.

By the charter of the city of Oswego (Laws of 1848, chap. 116, § 1, title 6), " All that portion of the Oswego river, within the bounds of said city, is declared to be a public highway."

By section two of the same title, the common council of said city are declared to be commissioners of highways in and for said city, with all the powers of commissioners of towns, subject to the provisions of the act. By section four of same title, the common council were given power to raise annually a sum not exceeding $2,500, as a general tax for highway purposes, in addition to moneys otherwise ordered by them. By section six of the same title, they were authorized to construct wharves and piers in the Oswego river, and to alter, widen, contract, straighten, or discontinue the same; and by section eleven of the same title, power was given under the sixth section of the same title, to deepen the channel of the Oswego river, or any part of it, the proceedings to

be regulated by the provisions of that title; and the seventeenth section of the same title, repeats the power to do, and adds the power to assess the expenses thereof on the land benefited thereby. The twenty-second and twenty-third sections provide for the manner of making assessments upon the persons liable to be assessed for making such an improvement. The power to direct the improvement in question to be made by the defendant, and the provision whereby to raise the means to meet the expense, is, in my opinion, clearly given in the charter; and the passage of the ordinance by the common council to that effect by more than two-thirds of the members of that body, based upon the petition set forth therein, is presumptive evidence, that all the proper preliminary steps had been taken, or at least estops the defendant from denying it. And if I am right in this, that the power is given, then I think I may add, that their obligation solemnly made by them to exercise this power, and to provide the means for carrying it into effect, imposes it as a duty upon them to perform, or at least to attempt the performance of the act they were thus obligated by their written contract to perform. The defendant seems to stand before the court, in this attitude; of having made a solemn, moral obligation, to pay the plaintiff for doing an act, which was in their power to direct; which the plaintiff entered upon the performance of, upon the faith of the promise in their obligation; that he was thereby induced to perform the labor, and expend his means; that the defendant knew and witnessed, and from time to time encouraged and ratified, the contract, by partial payments; that the law provided them with the means and the power to make the payments according to their contracts, but the exercise of which power, and the employment of which means, they never made the first effort to exercise or appropriate for that purpose; and that when the defendant attempted to quicken them into duty by an appeal to the courts, the defense interposed is, that they never had any authority to make the contract they have made. It is not the disposition of courts, so far as I know, to encourage, or to give countenance to such defenses, except

where, upon the imperative demands of the law, and upon clear and well established grounds, it is justified. The law must still prevail, if the defenses are justified by it. We will examine this defense further.

It is urged in this defense, that the defendant was the mere agent or instrument of the persons interested in this improvement, for the purpose only of collecting the money, and to see it applied to the particular object specified in the contract; that the common council of Oswego had no power to create a charge upon the city, but only upon the fund to be raised from the assessment of the property to be benefited. Various cases of authority are cited to sustain this proposition of the defense, which it becomes necessary to examine for this purpose.

The first case is *McCulloch* v. *The Mayor of Brooklyn* (reported in 23 Wend., 458). In that case the action was against the city on an assumpsit. The city had made no contract; the action was to recover for the damages which had been appraised or awarded to the plaintiff for his lands taken to make the improvement. The sums so awarded by the appraisers were not by law made debts against the city, nor did the law make it the duty of the common council to pay the money for the property so appraised and so awarded. The court very properly said in that case, that assumpsit could not be maintained. There was no express contract; none could be implied. It will be seen from this case that it has no features of similarity with the case before us. There is, however, in that case a principle that makes it prove too much for the defendant's use. The court, though of the opinion that assumpsit was not the plaintiff's remedy, say : "If the common council (who were held to be agents through whom the money was to be obtained) has neglected the duty of putting the machinery in motion, or been want-- ing in diligence, an action on the case would perhaps lie in favor of any one who would be entitled to the money when collected."

The case of *Lake* v. *The Trustees of Williamsburgh* (4 Denio, 523-4) is another of the cases cited, and is but a repe-

tition of the principle in the preceding case. The action was assumpsit upon two drafts, given to pay for improvements made in that village, in opening an avenue. An assessment had been made upon the persons benefited, to create a fund for the purpose of paying for the improvement. The president of the corporation gave the first draft, payable out of the "Union Avenue fund." This was not paid, and a subsequent draft was given, including the amount of the first, and some other demand, directed to charge the same to the account of the "Union Avenue." The court held, that the drafts created no charge against the village or its treasury, but on a particular fund ; and they put it on the ground, "that these drafts contained no words of contract." They distinguish that case from *Kelly* v. *Mayor of Brooklyn* (4 Denio, 265), where the obligation was a *contract* absolute in itself, and where the defendants, for that reason, were held liable. That authority is in favor of the plaintiff, not the defendant.

The next is the case of *Hunt* v. *The City of Utica* (23 Barb., 390). This case is subsequently reported in 18 N. Y., 442. The Court of Appeals held the question to be, whether the contract under which the work in question was performed undertook absolutely to pay the contractor, or to pay it in the manner in which it was held, the contractor understood it to be paid by his proposition in applying for the work; to wit, to take it from a fund to be assessed and collected by the defendant. The court held the latter to be the understanding, and the plaintiff for that reason failed to recover. A case clearly distinguishable from the present.

The case of *Baker* v. *The City of Utica* (19 N. Y., 326) is also relied upon by the defendant. That case lays down no principle differing from the last preceding case in the defendant's favor; but a rule is laid down, which, by the strongest implication, is against them. The note is this: "A person accepting an office in a municipal corporation, under a charter providing a peculiar mode of compensation for his services, can, *in the absence of a different express contract*, obtain compensation only in the case and manner thus

provided." The plaintiff in the case before us was not an officer of the corporation, but had a different and an express contract from them, to pay absolutely.

The last cited case to this point, is *Beard* v. *The City of Brooklyn* (31 Barb., 142). That case contained the features of liability, on the part of the corporation, similar to the cases above considered. The action was based upon a breach of *duty*, on the part of the defendant, through its officers, and on this ground the plaintiff recovered a judgment. BROWN, J., who delivered the opinion, after reviewing the doctrine of the above cited cases, says: "The negligent omission of the defendant is too manifest to admit of any doubt, and the authorities to which I have referred are decisive of the plaintiff's right to recover." A note in the case is to this effect: "That a corporation cannot, with impunity, enter into contracts with individuals by which *they* are induced to expend their labor and substance in works of public improvement, and then refuse, or negligently omit, to employ the means given it by law, for their recompense and reimbursement."

This, I think, is good morals, as well as sound law, and, in my view, it has application to the features of the case before us.

I think it may be regarded as a settled proposition that municipal, as well as other corporations, which must of necessity act by human agencies, are liable for the negligent acts of their agents, to the same extent as natural persons are. And this is the principle, as I understand it, upon which the learned referee, and also the Supreme Court, applied to this case. The right, as well as the duty, to direct these improvements by these governmental agents, when the power is conferred by law, and the preliminary steps have been taken which authorize action, has been so ably and clearly settled by the cases of *The People* v. *Mayor of Brooklyn* (4 Comst., 419) ; *Hutson* v. *Mayor of New York* (5 Seld., 163) ; *Conrad* v. *The Village of Ithaca*, and *Hickok* v. *Village of Plattsburgh*, in note of same case (16 N. Y., 158), and cases cited, that I need not dwell upon this point.

It was, therefore, competent for the common council of Oswego to make a contract with the plaintiff for this city improvement, and, having made the contract, and the common council having lawful power to provide the means in the manner specified, the city is liable upon the contract, and if the common council omit or neglect their duty in this regard, the city becomes liable also for this reason, and the laborer and contractor, in the case of an absolute contract, is bound to look no further than his contract. He does not guarantee that the agents of the city will perform their duties properly; he does not stipulate to await their action in obtaining the means, nor to abate his claim if they fail in their duty. He is bound to look no further than to the terms of his contract. It is distinctly found as a fact by the referee that the common council "*failed* and *neglected* and *refused* to take the necessary measures for raising the funds necessary for defraying the expenses of said improvement, and enabling the city to fulfill the requirements of said contract, on its part to be performed and fulfilled." The case of *Cumming* v. *The Mayor, etc., of Brooklyn* (11 Paige, 600) is a case in point. Unless that case is to be overruled, this case has been correctly decided.

The sections of the charter of the city which are cited as restrictive of the power of the defendants (§§ 2, 16, 18 and 19 of title 5), have no application to the means for raising money for the improvements in question.

I think the judgment should be affirmed.

All concur.

Judgment affirmed.