In the Matter of Opening LOCUST AVENUE in the Village
of Port Chester, Respondent.

MARGARET S. THEALL, Appellant.

1. VILLAGE OF PORT CHESTER — ASSESSMENT FOR STREET OPENING —
AMENDMENT TO CHARTER CONSTRUED (L. 1902, CH. 219).   Chapter 219 of
the Laws of 1902, which amended the charter of the village of Port Chester
(L. 1868, ch. 818, tit. 5, §§ 2, 5) and provided that the board of trustees,
without petition, might, by unanimous action, inaugurate a proceeding
for the opening of a street, the expense of which, not exceeding fifty per
cent, should be paid by the issue of bonds if in the judgment of the trustees
the improvement is of benefit to the village at large, when read in con-
nection with other provisions of the charter, as it must be, does not pro-
vide for a separate and independent proceeding for the opening of streets,
and require the whole amount to be assessed upon the village at large; the
express limitation of the amount to be paid by the village renders it neces-
sary that the balance of the expense must be met by a local assessment,
as in the case of a proceeding by petition, i. e., upon the property benefited
thereby.

2. JUDGMENT DIRECTING PAYMENT FOR LAND PURCHASED BY VILLAGE
UNDER CONTRACT FOR STREET OPENING PURPOSES, NOT RES ADJU-
DICATA UPON QUESTION OF ITS AUTHORITY TO MAKE SPECIAL ASSESSMENT
UPON PROPERTY BENEFITED.   A judgment against the village in favor
of a property owner whose land had been taken for the avenue under a
contract for its purchase, executed by the board of trustees, which held
as conclusions of law that the proceeding to open the avenue was con-
ducted under the amendatory act; that the same was a wholly independ-
ent proceeding; that the consideration was to be paid like other lawful
charges against the defendant, and that the plaintiff was entitled to judg-
ment for the specific performance of her contract and for the payment to
her of the purchase price of the land, with interest, is not res adjudicata
upon the question as to the authority of the village to assess the whole or
any part of the expense of opening the avenue by special assessment
upon the property benefited thereby, and is not a bar to the confirmation
of the report of commissioners making such assessment; the village, by
the charter, was expressly authorized to make the contract; but the fact
that it was adjudged liable to pay the purchase price does not affect
its right to collect it from the owners of the property benefited by the
improvement.

3. ERRONEOUS INCLUSION OF COSTS AND EXPENSES IN REPORT OF COM-
MISSIONERS.   The expenses and costs in an unsuccessful proceeding to
open the avenue, which were wholly the result of erroneous and unlawful
proceedings upon the part of the village and its trustees, cannot be

included in the expenses of a subsequent proceeding for the same purpose, since they are not actual costs and expenses of the improvement, as against a property owner, within the meaning of the charter.

*Matter of Locust Avenue,* 110 App. Div. 774, modified.

(Argued April 18, 1906; decided May 8, 1906.)

Appeal from an order of the Appellate Division of the Supreme Court in the second judicial department, entered January 26, 1906, which reversed an order of the Westchester County Court denying a motion to confirm the report of commissioners of estimate and assessment in the within proceeding and granted said motion.

The nature of the action and the facts, so far as material, are stated in the opinion.

*Ralph E. Prime* for appellant. The trustees having proceeded under the amendment of 1902 to the village charter, they had no power to assess back upon the properties the purchase price of land acquired under that amendment. The two proceedings were separate and distinct, the one under the old charter and the other under the amendment of 1902, and are not to be confounded or conglomerated or worked together. (L. 1902, ch. 219.)

*Jerome A. Peck* and *Arthur R. Wilcox* for respondent. Section 4 of title 5 of the village charter does not add a separate and distinct proceeding for acquiring land for highway purposes so far as the method of paying for such land is concerned. (*Smith* v. *People,* 47 N. Y. 330; *McCarty* v. *Orphan Asylum,* 9 Cow. 438; *Gilbourne* v. *Bd. Suprs.,* 62 Hun, 219; *Lyon* v. *M. R. R. Co.,* 31 Abb. [N. C.] 356; *Goldman* v. *Kennedy,* 49 Hun, 157; *Miller* v. *McKeon,* 15 App. Div. 137; *Schlegel* v. *A. A. & B. Co.,* 12 Abb. [N. C.] 280; *People ex rel. Bockes* v. *Wemple,* 115 N. Y. 302; *People ex rel. Savings Bank* v. *Butler,* 147 N. Y. 164; *Matter of Klock,* 30 App. Div. 34.)

Chase, J. The village of Port Chester was incorporated by chapter 818 of the Laws of 1868. By section 4 of title 5 of that act it is provided:

" Whenever a petition for opening, extending or widening any street, avenue or square in said village, signed by one-third of the persons owning lands situated on the line of the same shall be presented, the trustees of said village shall cause a notice to be published in the village newspapers, that such application has been made, and of the time &ast; &ast; &ast; when they will proceed on said petition &ast; &ast; &ast; and unless a remonstrance signed by a majority of the persons who will be assessed for the expense thereof, shall be presented to them on or before the day specified in said notice, and if they shall deem the application proper, they may, on the day specified in said notice, or as soon thereafter as may be, by a resolution decide to allow such improvement to be made. Before giving notice of the pendency of such application, the trustees shall fix the limit or district of assessment beyond which the assessment shall not extend; and a description of such limit or district shall be inserted in and form part of such notice. If the trustees shall deem it proper to permit such improvement to be made, they shall cause application to be made to the County Court of the county of Westchester, or to the Supreme Court at a special term held in the judicial district in which said county shall then be situated, for the appointment of three persons as commissioners to estimate and assess the expenses of said improvement, and the amount of damages and benefits to be sustained and derived therefrom, by the owners of such lands and buildings as may be affected thereby. Notice of said application shall be published in one or more of the village newspapers once in each week for two weeks successively, before the day on which application is to be made. The owners of property liable to assessment, shall have the right to nominate in writing to the court, persons qualified, as hereinafter mentioned, to serve as commissioners; and the said court shall thereupon appoint from among the persons so nominated, if any, three persons as such commissioners, who shall not be interested in the improvement, and shall be owners of a freehold estate in said village, liable to taxation; the said court may also appoint another or others

to act in the place of any one or more of such commissioners who may die, decline serving, remove from the village, be or become interested in the improvement, or from any cause may be disabled from serving, without notice, upon application of the said trustees."

On March 26, 1902, chapter 219 of the laws of that year was enacted, which added to said section 4 of title 5 of said act, at the end thereof, the following provision:

"The board of trustees of said village by the unanimous vote of all its members may allow any such improvement to be made and may cause any property, rights or easements to be taken for such purpose without such petition and notice or in case of a petition against such remonstrances. Whenever the board of trustees shall intend to lay out, open, widen, straighten or extend any street, avenue or highway in the said village and the lands of any person or corporation or any right or easement therein will be necessary for that purpose or whenever the board of trustees shall ordain that the lands of any person or corporation or any right or easement therein will be necessary for public use for any of the purposes mentioned in the charter of the village of Port Chester, they shall cause the same to be surveyed and a map thereof to be made and filed in the village clerk's office, and a duplicate copy of such map shall also be filed in the Westchester county clerk's office showing the several lots, tracts or parcels of land and the rights or easements therein, which are deemed necessary to be taken, and in case of laying out, opening, widening, straightening or extending any street, avenue or highway, the commencement, course and termination of the proposed street, avenue or highway in, through or over the lands so to be taken, and for that purpose the said board of trustees, and those acting by its direction shall have the power to enter upon any lands in the said village. The board of trustees shall then declare by resolution their intention to take and appropriate the said property for the proposed improvement, and thereafter they may purchase the said land or right or easement therein from the owner or owners thereof and pay

therefor to him or them such compensation as they should deem reasonable, upon receiving from such owner or owners a conveyance of the fee of said land to said village. In case the said board of trustees is unable to agree with the said owner or owners for the purchase of said land, rights or easements required for any of the purposes aforesaid, then the said board of trustees shall, and may acquire the same by condemnation proceedings under the provision of the condemnation law of this state, chapter twenty-three of the Code of Civil Procedure."

The appellant contends that since the enactment of chapter 219 of the Laws of 1902 the charter provides two wholly independent proceedings for opening and extending streets in said village, one of which she denominates the "voluntary" proceeding, and the other of which she denominates the "involuntary" proceeding, and she insists that under the latter of said proceedings the expenses of said improvement must be paid by a general tax on the property real and personal of said village and that the same cannot be assessed upon the property benefited thereby in proportion to the amount of such benefits.

By section 2 of title 5 of said charter, as the same was enacted in 1868 and as it existed at all the times herein mentioned, it is provided : "The trustees shall have power * * * to cause streets and avenues to be opened, extended, widened, regulated, graded and paved . * * *. The expense of all such improvements, except for repairs, shall be assessed and be a lien on the property benefited thereby in proportion to the amount of said benefit * * *."

Chapter 219 of the Laws of 1902 did not expressly repeal the other provisions of said charter which provide how the expense of opening streets shall be paid, but in that act (Chap. 219, Laws of 1902, section 5) section 30 was added to said title of the charter of said village which added section provides as follows :

" The said board of trustees are hereby authorized and empowered, whenever in their judgment the opening, widen-

ing, straightening or extending of any street, avenue or high-way or any part or portion of the same is of benefit to the village at large and the inhabitants thereof, to ordain and resolve by unanimous vote of all the members of said board of trustees that a proportion of the expense of the opening, widening or extending of such street, avenue or highway, including attorneys', engineers' and inspectors' fees, not exceeding fifty per centum thereof, shall be paid by an issue of the village bonds for that purpose; and in such case the said trustees may and they are hereby authorized and empowered to issue bonds of the village for the purpose of paying the part or proportion of such expense which they shall have fixed to be paid by the issue of village bonds; and the said board of trustees shall then proceed in the work of opening, widening, straightening or extending any such street, avenue or highway as provided in title five of the charter of the village of Port Chester."

The charter with its amendments to the time herein men-tioned does point out two ways for inaugurating a proceeding to open and extend a street; one where at least one-third of the persons owning land situated on the line of the street peti-tion for the same; and another, in a case where the board of trustees unanimously favor such improvement, in which case they are authorized to open or extend a street without a peti-tion therefor and even against a remonstrance signed by a majority of the persons who are to be assessed for the expense thereof. It also provides different ways for obtaining the title to the lands or easements required for the improvement.

In the construction of a statute it is necessary to read all the parts thereof to ascertain the legislative intent. An orig-inal statute with all the amendments thereto must be read together and viewed as one act. (Black on Interpretation of Laws, secs. 130, 131.)

When the charter of said village with its amendments is read as one instrument, it appears that the authority given to the board of trustees by unanimous vote to open and extend a street and obtain title to the lands or easements necessary

therefor was not intended to affect the other provisions of the charter relating to raising the money to pay for said lands and easements.

The provision of the charter which requires that *all* the expense of opening and extending a street shall be assessed on the property benefited thereby was in force when the act of 1902 was before the legislature and it clearly recognized the binding force of such provision in adding said section 30 to title 5 of the charter and thus giving the board of trustees further discretionary power in regard to paying for the lands and easements by the same act by which the powers of the board of trustees were enlarged as stated.

In view of the fact that the legislature was about to authorize the board of trustees to open and extend a street against the remonstrance of a majority or even all of the persons who would be assessed for the expense thereof it may have felt that the board of trustees should have some discretion about the amount that should be paid by special assessment. The act shows that the subject of raising the money to pay the expenses of opening and extending streets was considered by the legislature when the power of the board of trustees was so extended, and by said section 30 the board of trustees were authorized in any case when in their judgment the improvement is a benefit to the village at large and the inhabitants thereof, by unanimous vote of all its members to pay part of the expense by an issue of village bonds for that purpose, but it expressly therein provided that the amount so paid should not exceed fifty per cent thereof.

Such limitation, read with the other provisions of the charter, makes it necessary that the board of trustees assess the expense of such an improvement, other than the amount so paid by the issue of village bonds, upon the property benefited thereby.

On January 7, 1901, a petition signed by fifty-four persons was presented to the board of trustees of said village asking that Locust avenue be opened and extended through lands of four persons named. The petition was received and certain

proceedings were taken thereon, but a remonstrance was received by said board of trustees, signed by thirty-six persons, and the proceedings were adjourned from time to time, and then by resolution laid upon the table until the next regular meeting, after which nothing seems to have been done in regard to the matter. There is nothing in the record to show whether said petition was signed by one-third of the persons owning land situated on the line of the street or whether the remonstrance was signed by a majority of the persons who would be assessed for the expense thereof. We are of the opinion that the proceeding by petition to have said street opened and extended was abandoned.

After the enactment of said chapter 219 of the Laws of 1902 the board of trustees, by unanimous vote, passed a resolution in which they recited the filing of the petition of January 7th, 1901, and that they intended to lay out and extend Locust avenue through certain lands, including the lands of the appellant, and directed that the lands be surveyed and that a map thereof be made and filed as therein stated. A map was thereupon made and duly filed, and a further resolution was unanimously adopted declaring that it is the intention of the board of trustees to take and appropriate the lands of appellant and others designated on said map for the purpose of opening and extending Locust avenue.

On January 16th, 1903, the village of Port Chester entered into a contract with the appellant to purchase of her the lands in said contract described, being the lands included within the bounds of said Locust avenue, so to be opened and extended, for the sum of $1,387 to be paid in cash upon the execution and delivery of the deed as in said agreement provided. It was in said agreement further provided that the deed should be delivered within five days after the written request of said village at the hour and place indicated by it in such request, and that the village upon executing the contract and delivering to the appellant a certificate of indebtedness for $1,387 might take possession of said lands and open and grade said street.

It was in said agreement further provided, " That the said party of the first part may use the said certificate of indebtedness for the purpose of paying any assessment which may be levied and assessed against her and her property for benefits derived by it and her from the opening and extending of said Locust avenue, and the same shall be received by the party of the second part as a payment of such assessment upon the party of the first part indorsing on such certificate of indebtedness a credit of the amount of such assessment, and thereupon the amount to be paid upon the delivery of the deed herein provided for shall be accordingly reduced."

The board of trustees unanimously resolved that in their judgment the opening and extending of said avenue will be and is of benefit to the village at large and the inhabitants thereof, and that twenty-five per cent of the expense of opening and extending said avenue, including attorneys', engineers' and inspectors' fees shall be paid by issuing village bonds, and that the balance thereof shall be paid by the owners of property included in an assessment district described in said resolution in proportion to the benefits derived from such improvement. Commissioners were thereafter appointed by the County Court of Westchester county to estimate and assess the expenses of the improvement and they thereafter made their report. An application was made to the Supreme Court to confirm such report, but the application was denied, with costs. From such order and a further order denying a motion to modify the order as first entered an appeal was taken to the Appellate Division, where the said orders were affirmed. (*Matter of Locust Avenue*, 93 App. Div. 417.)

The court on said appeals said: " The commissioners appointed by the County Court, assuming such appointment to have been regular, had jurisdiction only to deal with the expense and the assessment for the opening of the highway, and when they attempted under the supposed authority of the village to go beyond this and to include the cost of grading and improving that way, they went outside of their powers. The village trustees could not confer upon them any greater

jurisdiction than that prescribed in the statute, and the effort
to do so has resulted in a condition of affairs where there was
nothing for the court to do except to set aside the whole
proceeding."

After the first special assessment was vacated and set aside
the village again applied to the County Court of Westchester
county for the appointment of three commissioners to estimate
and assess the expenses of said improvement and the amount of
damages to be sustained and derived therefrom by the owners
of the lands and buildings affected thereby, and such commis-
sioners were appointed and they thereafter made their report.

About the time of the appointment of the second commis-
sion the appellant brought an action in the Supreme Court
against the village alleging that it had taken possession of
the lands described in the contract and applied the same to the
purposes of a public highway and asked that it be compelled
to complete the sale and accept a deed and pay therefor
according to the terms of said contract, or that plaintiff have
judgment against said village for the sum of $1,387, with
interest. The village demurred to the complaint on the
ground that it did not state facts sufficient to constitute a
cause of action, which demurrer was overruled, and it then
answered the complaint, in which, among other things, it
alleged that a reasonable time had not elapsed since the
making of said contract within which to have requested or
demanded the deed referred to in the contract, and it further
alleged that the only method authorized by the charter for
raising money to pay for the lands was by assessment of the
lands within an assessment district, and that no funds of the
defendant were available for the purchase of plaintiff's lands,
and that said contract was executed and delivered with refer-
ence to the charter of said village, and that the defendant had
diligently pursued and was then pursuing the steps required
to raise the money to pay for plaintiff's land, and that by
reason thereof a reasonable time had not elapsed within which
the deed of such land should have been demanded, and asked
that the complaint be dismissed.

Before the application to confirm the report of said second commission, judgment was rendered in said Supreme Court action in appellant's favor, and the court found the facts in accordance with the allegations of the plaintiff's complaint, and held as conclusions of law that the proceeding to open Locust avenue was conducted under that part of section 4 of title 5 of the village charter added by chapter 219 of the Laws of 1902, and that the same is wholly independent of the said section as the same existed prior to said act of 1902, and that the consideration of said contract is to be paid like other lawful charges against the defendant, and that the plaintiff was entitled to judgment for the specific performance of said contract and for the payment to her of said sum of $1,387, with interest, and judgment was entered thereon accordingly.

An application was made to the County Court of Westchester county to confirm the report of said second commission, and the appellant not only contested the same on its merits, but offered in evidence all of the proceedings theretofore had in relation to said matter, including the judgment roll in said action in the Supreme Court, and claimed that such judgment and the prior proceedings in the matter of the opening of said street were *res judicata* against the village on such motion.

The County Court held that "The matter involved in this application having been adjudicated upon by the Supreme Court in the action of Margaret S. Theall against the village of Port Chester, the motion to confirm the report of the Commissioners herein should be denied and the proceeding dismissed." From an order entered in accordance with such decision, an appeal was taken to the Appellate Division, where the order of the County Court was reversed and the report of said commissioners confirmed, and from the order entered on such reversal and confirming said report, this appeal is taken.

A judgment is not *res judicata* between parties as to incidental and immaterial matters not necessary in determining which party is entitled to judgment on the claim in suit or to

sustain the judgment rendered. (*Stokes* v. *Foote*, 172 N. Y. 327; *Rudd* v. *Cornell*, 171 N. Y. 114; *People ex rel. Reilly* v. *Johnson*, 38 N. Y. 63; *Woodgate* v. *Fleet*, 44 N. Y. 1; Am. & Eng. Ency. of Law [2d ed.], vol. 24, 768.)

The authority of the village to assess the whole or any part of the expense of opening Locust avenue by special assessment upon the property benefited thereby was not involved in determining whether the plaintiff was entitled to judgment in her action in the Supreme Court. The charter of the village expressly authorized and empowered the board of trustees to purchase lands and easements for the proposed improvements and pay therefor such compensation as they should deem reasonable.

It was held in an opinion by the chancellor in *Cumming* v. *Mayor, etc., of Brooklyn* (11 Paige, 596), that where a corporation has power to enter into a contract for the purchase of lands the person so contracting with the corporation is entitled to payment out of the general fund of the corporation, leaving such amount to be reimbursed to the general fund out of the proceeds of the assessment when made. This decision was made in an action to recover on a contract to grade an avenue in the city of Brooklyn, and the chancellor said :

" There is nothing in the charter which prohibits the corporation from entering into general contracts for the making such improvements. It is true, the same section of the charter which authorizes these improvements to be made directs the expense thereof to be assessed upon the owners and occupants of the lands and premises benefited thereby, in proportion to the amount of such benefit. And as the amount of funds which the corporation is annually authorized to raise for general purposes is limited by law, it is a prudent precaution in making contracts for grading and improving streets, etc., to regulate the mode of payment in such a manner as to give a reasonable time to assess and collect the amount from the owners of the property benefited before the payments for the labor shall be demandable from the corporation. The assessment of the expense as a local tax is not however a

restriction upon the power of the corporation so as to require it to contract only for payments out of that particular fund. But this local tax is a fund which has been provided by the legislature to reimburse the corporation for the expenses of an improvement which it has either paid or become liable to pay. And if the corporation, voluntarily or by compulsion, pays such expenses out of its general funds, any citizen who pays taxes may apply to the proper tribunal to compel the corporation to cause the general fund to be reimbursed by an assessment and collection of the expense of such improvement from the owners of the property benefited, or out of the property itself, as authorized and directed by the charter."

The courts have frequently sustained the right of persons who have entered into contracts with municipal corporations either for the sale of lands or of property, or the performance of services, to recover the amount thereof in advance of the collection of a special assessment to pay therefor when the municipality has unreasonably neglected to collect the special assessment. (*Baldwin* v. *City of Oswego*, 2 Keyes, 132; *Sage* v. *City of Brooklyn*, 89 N. Y. 189; *Weston* v. *City of Syracuse*, 82 Hun, 67; *Smith* v. *City of Buffalo*, 44 Hun, 156; *Reilly* v. *City of Albany*, 40 Hun, 405; affd., 112 N. Y. 30; *Buck* v. *City of Lockport*, 43 How. Pr. 361.)

Whether the appellant should have recovered in her action against the village in view of the fact that the delay in collecting the special assessment was at least in part due to objections thereto made by her is not now before us. The judgment in the Supreme Court action is not a bar to the confirmation of the commissioners' report.

In the report of the second commission they have included in the expenses of the proceeding all of the expenses and costs of the village in the first proceeding, which was held by the court to have been without jurisdiction. The aggregate amount of such expenses and costs, with interest thereon included in their report, is $517.83.

The expense of such proceedings and costs paid in an unsuccessful defense of the same were not actual costs and expenses

of the improvement as against the appellant within the meaning of said charter. The appellant should not be subjected to the payment of such costs and expenses which were wholly the result of erroneous and unlawful proceedings on the part of the village and its trustees. We see no other reason why the report of the commissioners should not be confirmed, and the order of the Appellate Division should be modified (section 65 of title 5 of said charter, as amended by chapter 606 of the Laws of 1905) by deducting from each assessment five hundred and seventeen-thirty-six hundred and fiftieths (517/3650) of the amount thereof and the proceedings should be remitted to the County Court of the county of Westchester to enter an order of confirmation in accordance with this opinion, and the order of the Appellate Division as so modified should be affirmed, without costs to either party in this court.

Edward T. Bartlett, J. (dissenting). I am of opinion that the charter of the village of Port Chester, as amended in 1902, provides two distinct proceedings for opening streets.

The order of the Appellate Division should be reversed and the order of the County Court affirmed, with costs.

Cullen, Ch. J., Gray, Haight,[1] Vann and Willard Bartlett, JJ., concur with Chase, J.; Edward T. Bartlett, J., reads dissenting memorandum.

Ordered accordingly.