MILLIE IRON MINING CO. v. McKINNEY.

(Circuit Court of Appeals, Sixth Circuit. July 26, 1909.)

No. 1,905.

1. JUDGMENT (§ 956*)—ESTOPPEL—EVIDENCE.

Where the opinion of a Circuit Court is included in a bill of exceptions, and thus made a part of the record, it is admissible in evidence in another case for the purpose of determining what questions were concluded by the judgment.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1823; Dec. Dig. § 956.*]

2. JUDGMENT (§ 587*)—CONCLUSIVENESS OF ADJUDICATION—MATTERS IN ISSUE.

Defendant entered into a contract with plaintiff which on its face was made by him as an individual. Plaintiff brought suit thereon against defendant and others as partners, alleging that defendant made the contract as agent for a partnership whose liabilities the defendants had assumed. The court found that such agency was not established and directed a verdict and rendered judgment for the defendants. Held, that such judgment was not a bar to a subsequent action on the same contract against defendant individually, although the court further expressed the opinion that he made the contract as receiver for the former partnership, which was a matter not material to the issues.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1089; Dec. Dig. § 587.*]

In Error to the Circuit Court of the United States for the Northern District of Ohio.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Jurisdiction in this case rests upon admitted diversity of citizenship. The cause came to trial before the court and a jury. At the close of the evidence offered by both sides, the court, on motion of defendant, directed a verdict to be returned in his favor. Motion for new trial being overruled and judgment entered on the verdict, the cause was brought here upon proceedings in error.

The action grew out of an agreement in writing consisting of two papers, each dated March 2, 1894. It is alleged: That under this agreement the Millie Company delivered to McKinney certain iron ore then on its stockpile near the city of Iron Mountain, Mich.; that McKinney agreed to accept the ore at $14,500 and to ship it to Lake Erie ports, as soon as convenient and profitable, and there sell the same; and, further, that if the gross receipts exceeded $14,500 and the cost of loading, railroad and lake freights, insurance and seller's commission of 10 cents per ton, and interest on the whole for six months at the rate of 6 per cent. he would pay the excess to plaintiff. It is alleged, further, that, in violation of his agreement, McKinney, on March 7, 1894, before the opening of navigation and before the ore was shipped to Lake Erie ports, sold the ore at $2.50 per ton, which, if reasonably held and marketed, would have brought $3.25 per ton, and that upon this price the Millie Company would have been entitled to a balance of $10,995.91. Plaintiff alleged that it had been damaged by reason of defendant's breach of contract in that sum and prayed judgment.

The answer contains a general denial in the first defense. The second defense sets up estoppel, alleging: That an action was brought in the court below, January 20, 1897, by the Millie Company against the present defendant, McKinney, and James Corrigan and Stevenson Burke, wherein the same contract as the one now in suit was involved; that in the former suit McKinney had been charged with failure to perform the contract in the manner now complained of, and with having, together with his codefendants, as a firm known as "Corrigan, McKinney & Co.," assumed to pay his (the present defendant's) obligations and liabilities under the contract, and by reason of the premises asked judgment against him; that evidence was presented by plaintiff; that McKinney made separate motion to direct a verdict in his favor on the ground that the contract was not made by him as an individual, but as receiver of a firm known as Corrigan, Ives & Co., pursuant to order of the Cuyahoga common pleas; that his motion to direct was granted, and, after motion for new trial was overruled, judgment was entered on the verdict and is in full force and effect.

In the reply it is admitted that plaintiff brought action against Corrigan, Burke, and McKinney, alleging in its petition that the three were copartners as Corrigan, McKinney & Co., and that McKinney had entered into the contract now sued on as agent for the copartnership of Corrigan, Ives & Co., and that Corrigan, McKinney & Co., had succeeded to the business of that firm and had assumed and agreed to perform the obligations of Price McKinney under said contract, and that the joint answer filed therein by the three defendants admitted the making of the contract by McKinney, but denied that he made it as agent for Corrigan, Ives & Co., or that the other firm had assumed the contract. It admits that the case went to trial upon these issues, and that the plaintiff, having failed in the opinion of the court to make proof of the agency of McKinney for Corrigan, Ives & Co., and of the assumption aforesaid by the other firm, verdict was directed and judgment entered on the verdict. It denied that the liability of McKinney under the contract was put in issue, tried, or contested.

In the trial of the present case the two papers constituting the agreement of March 2, 1894, were read in evidence. They disclose the Millie Company and Price McKinney as the only parties to the agreement. Proofs were offered tending to show: That the ore was delivered to McKinney and sold as alleged in the petition; that it was fairly worth, and would, if reasonably disposed of, have brought the price named. Defendant offered proofs tending to contradict the evidence concerning sale of the ore, and to show that in fact he made the contract as receiver, though under the advice of counsel he made it in his individual name. Evidence was received tending to show: That at the date of the contract the Millie Company owed Corrigan, Ives & Co. $14,500; that the defendant was then receiver of that firm; and that,

through correspondence had by him as receiver with the Millie Company, it knew that the purpose of the agreement was to utilize the ore to discharge the indebtedness of the Millie Company. It was admitted during the introduction of the defendant's testimony that the amount actually received by him for the ore sold exceeded the consideration aforesaid, and all expenses by something more than $900, and that, if the agreement was in fact the individual undertaking of defendant, the plaintiff would be entitled to that sum, with interest. The pleadings and the proceedings of the court in the former case, together with the opinions rendered therein, first, by Judge Hammond upon the motions made for directed verdicts, and, second, by Judge Tayler in overruling the motion for a new trial of that case and entering judgment on the verdict, were received in evidence. In granting the motion for a directed verdict, the court below, without determining any other matter, decided that the operation of the judgment in the former case prevented recovery in the present case.

The assignments of error relate to admitting the aforesaid copies of pleadings, also of the proceedings and judgment and opinions of the court, also of the briefs of plaintiff and appointment of McKinney as receiver of Corrigan, Ives & Co., also to granting motion to direct verdict and entering judgment.

A. C. Dustin, for plaintiff in error.

S. H. Holding and Tracy H. Duncan, for defendant in error.

Before LURTON, SEVERENS, and WARRINGTON, Circuit Judges.

WARRINGTON, Circuit Judge (after stating the facts as above). The assignments of error may be disposed of under the inquiry: Does the judgment in the former case operate as an estoppel against recovery in the present action?

The cause of action in each case was based upon the same instruments, and it was sought in each to recover the difference between the price received for the ore and the price alleged to be its true value, less charges and expenses. But the present action is upon the agreement as it was written; it is against Price McKinney as principal. The former action was not upon the contract as it was written. Recovery was sought upon the agreement as though a totally different principal had in name executed it through Price McKinney as agent.

The form of the present action appears in the statement. The former action was against James Corrigan, Stevenson Burke, and Price McKinney. Immediately after statement of jurisdictional facts, it was alleged in the petition: That Corrigan and Burke and one Ives were copartners under the firm name of Corrigan, Ives & Co.; that Corrigan, Burke, and McKinney organized a copartnership under the name of Corrigan, McKinney & Co.; that the last-named firm succeeded to the business of the prior firm, and assumed all the liabilities of Corrigan, Ives & Co. It was next alleged that Corrigan, Ives & Co., in March, 1894, had a claim against the Millie Iron Company, which on the second of that month was liquidated at $14,500. Then followed a statement of the contract made between the Millie Company and McKinney on that date, and thereupon:

"Plaintiff further says that it is informed and believes, and so charges the fact to be, that the said Price McKinney acted, throughout, in said matters, in the interests and for the benefit and at the special instance and request of Corrigan, Ives & Co., and as their agent and representative, and that the contract and agreement aforesaid, although made by him in his own name, was the contract, agreement, and obligation of the said firm of Corrigan, Ives

& Co., and that all that the said Price McKinney did in and about said contract, and in and about the execution and attempted execution thereof, was done by him as their agent and representative, and with their full knowledge and approval."

After stating the quality and value of the ore and what under reasonable handling it would have brought, the petition charged that Price McKinney and Corrigan, Ives & Co. failed to carry out the contract and sell the ore as they should, to the damage of the plaintiff in a sum specified.

It is true that a breach was charged in the former case against both McKinney and his alleged principal; but in the same paragraph, not to speak of other portions of the petition, it was further charged that, if the contract had been performed, "said Corrigan, Ives & Co. and said Price McKinney, as their duly authorized agent and representative, would have realized" the excess sued for. Charging the breach of contract against McKinney as well as Corrigan, Ives & Co., must, we think, be treated as a charge against McKinney in his capacity as agent of that firm, for the petition as a whole is framed upon that hypothesis, and Judge Hammond so regarded it.

The only features of the answer in the former case that need be noticed are the averments that on July 11, 1893, an action was brought by Stevenson Burke in the Cuyahoga common pleas against his copartners, Corrigan and Ives, and that the firm of Corrigan, Ives & Co. was dissolved, and Price McKinney appointed and qualified as receiver; also, the admission that that firm had a claim against the Millie Company which on March 2, 1894, was liquidated at $14,-500.00; also, the further admission that on that date the Millie Company and McKinney entered into an agreement, but denial was made that it was correctly set forth in the petition. This is followed by a denial of every averment in the petition not admitted. The reply contained a denial of all allegations of the answer "except such as are admissions of plaintiff's petition."

The issues of the former suit may be stated thus: Was the contract made between the Millie Company and McKinney on March 2, 1894, correctly set forth in the petition? Was the firm of Corrigan, Ives & Co. the undisclosed principal of McKinney in making the contract? Had a breach of it been committed by Corrigan, Ives & Co.? Was that firm's liability, if any, assumed by Corrigan, Burke, and McKinney, as copartners under the name of Corrigan, McKinney & Co.?

The evidence taken at the former trial does not appear in the present record. However, admission was made in the pleadings, as before pointed out, that Corrigan, Ives & Co. had a claim against the Millie Company for money loaned and advances made to it, which, on March 2, 1894, was liquidated at $14,500.

The order granting motions for directed verdicts shows that Corrigan and Burke made a motion to that effect in their own behalf, and that McKinney thereupon made a like motion in his favor; but the judgment was joint and not several. Plaintiff's motion for new trial was thereby overruled, and the judgment proceeds:

"It is therefore considered that said defendants go hence without day and recover of said plaintiff their costs herein."

To show that this judgment operated as an estoppel, defendant below offered in evidence the opinion rendered by Judge Hammond on the motions to direct verdicts for defendants, and it was received against exception of counsel for plaintiff. We think the court properly received the opinion in evidence. The opinion was made part of the bill of exceptions. It contains this statement:

"I desire to place here, in record form, the most pertinent ground for that judgment."

Being thus a part of the record, and seemingly having been so intended by the judge delivering the opinion, its evidential character is, we think, analogous to that of an opinion which is filed pursuant to a constitutional provision, as in Stearns v. Lawrence, 83 Fed. 739, 743, 28 C. C. A. 66; and it is also within the requirements pointed out by Mr. Justice Harlan when discussing a somewhat similar question in Loeb v. Columbia Township Trustees, 179 U. S. 472, 481, 21 Sup. Ct. 174, 45 L. Ed. 280. See, also, Yates v. Utica Bank, 206 U. S. 181, 183, 27 Sup. Ct. 646, 51 L. Ed. 1015; Nat. Fdry. Co. v. Oconto Water Supply Co., 183 U. S. 216, 234, 22 Sup. Ct. 111, 46 L. Ed. 157; Last Chance Min. Co. v. Tyler Min. Co., 157 U. S. 683, 690, 15 Sup. Ct. 733, 39 L. Ed. 859; Cromwell v. County of Sac, 94 U. S. 351, 359, 24 L. Ed. 195; Hubbell v. United States, 171 U. S. 203, 208, 18 Sup. Ct. 828, 43 L. Ed. 136.

The opinion of Hammond, Judge, is too long to be quoted. The learned judge stated: That the most that could be claimed for plaintiff on the facts was that Corrigan, Ives & Co. had a balance due from plaintiff and were entitled to payment, that McKinney was appointed receiver of that firm, and that the contract was negotiated during such receivership; that it was not "signed by him as receiver eo nomine," but was in the judgment of the court the "contract of the receiver"; that the debt due the receiver was largely increased by advancements of moneys from the receiver's fund; that McKinney sold the ore, applied the proceeds upon the debt, advances, and expenses, and had a balance of $980.

Coming, then, as he stated, to the "chronological relation of the facts," the court's inferences were, in substance: That, notwithstanding the receivership, McKinney carried his transactions as receiver upon the books of Corrigan, Ives & Co. until April 1, 1894, when the firm of Corrigan, McKinney & Co. was formed; that then all the accounts of the old firm were transferred to the books of the new one, and kept as its accounts, including that of plaintiff; and, further, that McKinney quite "thoroughly ignored the relationship of receiver, and all this business was conducted pretty much as if no receiver had been appointed."

Allusion was made to the fact that the petition ignored the relationship of receiver; also, to the averment that Corrigan, McKinney & Co. had succeeded to the business of Corrigan, Ives & Co., and had agreed to pay all the liabilities of the latter firm; and, also, to the averment that McKinney made the contract at the special instance and request of Corrigan, Ives & Co. as their agent and representative. It was then stated by Judge Hammond:

"That there is not the least proof of such an agency, either express or implied, and that such a theory of the legal rights and remedies arising to the plaintiff out of the facts which have been proved is wholly untenable."

Then followed a repetition of the earlier statement, before noticed, that McKinney was not dealing with the contract as agent of others, but in his capacity as receiver; but, after some discussion of the statute of frauds, the learned judge said of the petition in that case:

"This petition makes a case of direct contract by the defendants with the plaintiff, through their authorized agent, McKinney, and, in my judgment, presents no other cause of action."

The rest of the opinion was devoted for the most part to suggestions as to how recovery might be made, and was closed thus:

"With this view of the case, I see no escape from granting the motions that have been made, to direct a verdict for the defendants, and it is so ordered accordingly."

The first thing to be observed of the opinion is that the denial made in the answer that the agreement admitted to have been entered into by the Millie Company and McKinney on March 2, 1891, was correctly set forth in the petition, is practically cleared away, for, instead of questioning its form or identity, the opinion recognizes it as being the one signed by McKinney and containing provisions identical with those of the one now in suit. This is in accord, too, with the allegations of the second defense of the answer in the present case. So far, then, as concerns the form of the contract and McKinney's individual signature thereto, they may be treated as facts found, if not admitted, in that case. Hence whatever liability, McKinney legally incurred in his individual capacity, as distinguished from his capacity as receiver, must not escape attention.

The next thing to be noticed is that, when describing what plaintiff's cause of action was, the learned judge did not anywhere state that plaintiff sought to hold McKinney individually liable upon the contract as principal. It is also to be remarked that, when he stated the case as made in the petition, he found a total failure of proof tending to support it; that is to say, that there was no evidence purporting to show that McKinney had made the contract for Corrigan, Ives & Co. as his undisclosed principal. It scarcely need be added that, with this failure of proof, the alleged assumption of that firm's liabilities by the new firm fell to the ground. Plainly, this was enough to dispose of the case.

But it is true, as contended, that in the judgment of the learned court the contract was made by McKinney as receiver. In spite of the statement that "McKinney quite thoroughly ignored the relationship of receiver," the evidence elicited the opinion so expressed. It is not easy to perceive the theory upon which evidence of the receivership and of McKinney's entering into the contract as receiver was calculated to support any issue tendered by the petition; much less, that such evidence was essential in that regard. The burden was on the plaintiff to offer some proof of its allegations of agency and undisclosed principal. If evidence tending to show execution of the contract as receiver would have been competent to meet evidence of

agency in McKinney (of Corrigan, Ives & Co.), still the former was not necessary until something of the latter nature was offered. Judge Hammond found that there was "not the least proof of such an agency." How then could evidence tending to show that McKinney made the contract as receiver be material, and why was it not purely collateral? How, too, could anything in the opinion, which was based on such evidence, have any other quality than the evidence itself?

In determining the operation of the judgment in that case as an estoppel in the present case, we must not overlook the distinction between the demands made in the two suits. We have pointed out the differences between those demands, and need not repeat them. Until the present action was brought, McKinney was never sued in his individual capacity for a breach of the contract as principal. If he chose to do so, there is no perceivable reason why he could not bind himself personally, although he was at the time a receiver. Wolf v. Lovering, 159 Fed. 91, 93, 86 C. C. A. 281; Gill v. Brown, 12 Johns. (N. Y.) 385. The contract on its face purports to create a personal obligation. No suggestion is made of fraud or mistake in either its preparation or execution. On the contrary (although we do not pass upon its competency), testimony was received at the last trial that McKinney entered into the contract in its present form purposely and under the advice of counsel. Can it be, then, that the former judgment is in itself an estoppel, forbidding a suit to enforce personal liability upon such a contract?

We think the demand made in the present action is so far different from the one made in the former suit that the principles applied in Cromwell v. County of Sac, before cited, must control here. Mr. Justice Field said of the judgment, which was relied on in that case as an estoppel (page 352 of 94 U. S. [24 L. Ed. 195]):

"In considering the operation of this judgment, it should be borne in mind, as stated by counsel, that there is a difference between the effect of a judgment as a bar or estoppel against the prosecution of a second action upon the same claim or demand, and its effect as an estoppel in another action between the same parties upon a different claim or cause of action."

In Northern Pac. Ry. Co. v. Slaght, 205 U. S. 122, 131, 27 Sup. Ct. 446, 51 L. Ed. 742, a case different in principle from the present one, Mr. Justice McKenna distinguished Cromwell v. County of Sac, with other kindred decisions, from the one then under consideration, by the use of language nearly identical with that just quoted.

Furthermore, there is another principle, before alluded to, which we regard as also applicable and controlling. It is that matters immaterial or only incidental to the issues and judgment in one action, even though heard and passed upon, do not work estoppel in a subsequent action between the same parties.

It is hardly necessary to repeat the proposition so often cited upon questions of this character from the Duchess of Kingston's Case, 2 Smith's Lead. Cas. (8th Ed.) 734, that a judgment is not "evidence of any matter which came collaterally in question, * * * nor any matter incidentally cognizable."

In Reynolds v. Stockton, 140 U. S. 254, 269, 11 Sup. Ct. 773, 777, 35 L. Ed. 464, Mr. Justice Brewer said:

"But records or judgments are not estoppels with reference to every matter contained in them. They have such efficacy only with respect to the substance of the controversy and its essential concomitants. Thus, Lord Coke, treating of this doctrine, says: 'A matter alleged that is neither traversable nor material shall not estop.' Co. Litt. 352b. And in a note to the Duchess of Kingston's Case, in 2 Smith's Lead. Cases, 535, Baron Comyn is vouched for the proposition that judgments 'are conclusive as to nothing which might not have been in question, or were not material.'"

In House v. Lockwood, 137 N. Y. 259, 270, 33 N. E. 595, 598, it appeared that Lockwood and wife had conveyed their joint property by deed to House, and that House in turn had executed a deed in form conveying the same property to Mrs. Lockwood. The Lockwoods claimed that the deeds were intended merely to transfer the property to Mrs. Lockwood, but House insisted that the transaction in fact was to secure a loan. Mrs. Lockwood brought suit to recover her deed, and failed; it being held that House's claim was correct. House then brought foreclosure proceedings, and to meet the Lockwoods' claim offered the former judgment. In the course of the opinion rejecting the judgment as an estoppel, Earl, Judge, said:

"But is has never been held that a judgment is an estoppel as to all the litigated facts and all the evidence which the one party or the other may choose to introduce upon the trial of the action, however important such evidence may have been. The estoppel extends to the material facts which are in issue between the parties to the action, and to such as necessarily bear upon, control, and are essential to the adjudication made."

See, also: Del. & L. R. R. Co. v. Kutter, 147 Fed. 51, 56, 57, 77 C. C. A. 315; Werckmeister v. American Tobacco Co. (C. C.) 138 Fed. 162, 163; Missouri Pac. Ry. Co. v. Texas & P. Ry. Co. (C. C.) 50 Fed. 151, 154; Stokes v. Foote, 172 N. Y. 327, 341, 65 N. E. 176; Matter of Locust Avenue, 185 N. Y. 115, 125, 77 N. E. 1012; Gilbert v. Thompson, 9 Cush. (Mass.) 348, 349; Lessee of Lore et al. v. Truman, 10 Ohio St. 45. 54; Rempe & Son v. Ravens et al., 68 Ohio St. 113, 125, 67 N. E. 282; Bank of Visalia v. Smith, 146 Cal. 398, 402, 81 Pac. 542; Cavanaugh v. Buehler, 120 Pa. 441, 457, 14 Atl. 391; Ford v. Ford's Adm'r, 68 Ala. 141, 143; Lorance v. Platt, 67 Miss. 183, 6 South. 772; Freeman on Judgments, § 258, p. 468; Black on Judgments, §§ 611, 614.

We conclude that there was error in holding that the first judgment operated as an estoppel in this cause. The very careful consideration given to the case by the learned judge at the trial, as shown by the record, satisfies us that he did not really pass upon any other question when directing the verdict and entering judgment.

The judgment must be reversed, and a new trial awarded; and it is so ordered.